## Case No. 9,072.

### The MARGARETTA.

[2 Gall. 515.] [2]

Circuit Court, D. Massachusetts.   Oct. Term, 1815.

NON-INTERCOURSE — PENALTIES — SECRETARY OF TREASURY—POWER TO REMIT — GOODS SUBSEQUENTLY IMPORTED—COLLECTOR'S SHARE.

1. The secretary of the treasury has no power to remit penalties, unless in cases provided for by law. If he recites his authority under a special act, and remits in pursuance of that act, the remission, if unsupported by such act, cannot be supported under the general act of March,

---

1 [Reported by Samuel Blatchford, Esq.]
2 [Reported by John Gallison, Esq.]

1797, c. 67 [1 Story's Laws. 458; 1 Stat. 506, c. 13].

[Quoted in New Orleans Nat. Bank v. Merchant, 18 Fed. 849.]

2. Under the act of 27th of February. 1813. c. 175 [2 Story's Laws. 1298: 2 Stat. 804, c. 33], the secretary of the treasury had no authority to remit the penalties for goods subsequently imported. contrary to the non-importation acts.

3. Under the act of 3d of March, 1797, c. 67, the district judge is bound, upon a petition for remission, to state the facts. and not merely the evidence of the facts: and the secretary of the treasury is bound by this statement of facts, and cannot legally act upon any other evidence. The district judge. in stating such facts, acts judicially. and the proof before him must be made by competent, as well as by credible testimony. A statement by the district judge. that the claimant only swore to the facts before him, is no legal proof under the act of 1797. upon which the secretary of the treasury is authorised to remit.

[Cited in Jewels Stolen from the Princess of Orange. Case No. 11,431; The Palo Alto, Id. 10,700.]

4. Under the act of 27th of February, 1813. c. 175, the secretary of the treasury had no authority to make a remission of part only of the property forfeited. If he remitted. at all, he was bound to remit the whole penalty or forfeiture.

5. Neither under the act of 1797. nor the act of 1813. had the secretary of the treasury any authority to remit the collector's share of the forfeiture, nor any part of it, eo nomine.

6. Until final judgment no part of the forfeiture vests absolutely in the collector: but, after final judgment, his share vests absolutely, and cannot be remitted.

[Disapproved in Confiscation Cases, 7 Wall. (74 U. S.) 461.]

[See The Hollen (Case No. 6,608). But see, contra, McLane v. U. S., 6 Pet. (31 U. S.) 404.]

This was an appeal from the district court of Maine in a proceeding upon an information in rem on the instance side of that court. The information contained two counts. The first, which is the only one now necessary to be considered, charged that the cargo, consisting of prohibited goods, was, on the third of September, 1813, imported into the United States from New Brunswick, contrary to the non-importation acts. There was no question, that the vessel and cargo were liable to forfeiture under these acts. Pending the proceedings in the court below, the claimants, Stephen Glover and Charles Tappan, procured a remission from the secretary of the treasury, in consequence whereof the learned judge of that court decreed condemnation of nine sixteenths of the goods claimed by them. and restoration of the remaining seven sixteenths. [Case unreported.] From so much of the decree, as restored the seven sixteenths, the United States appealed to this court; and the sole question was as to the legal sufficiency of these remissions. They were both in the same form, and that to Glover was as follows: "To All to Whom these Presents shall Come, I, George W. Campbell, Secretary. &c., Send Greeting: Whereas a statement of facts, bearing date the 24th of February, 1814, with the petition of Stephen Glover thereto annexed, touching certain forfeitures and penalties incurred under the statute of the United States, entitled 'An act to interdict the commercial intercourse between the United States and Great Britain and France, and their dependencies, and for other purposes,' has been transmitted to the secretary of the treasury by the judge of the United States for the district of Maine, pursuant to the statute of the United States entitled, 'An act directing the secretary of the treasury to remit certain fines, penalties and forfeitures therein mentioned,' as by the said statement of facts and petition remaining in the treasury department of the United States may fully appear; and whereas, I, the said secretary of the treasury, have maturely considered the said statement of facts and petition: Now, therefore, know ye, that I, the said secretary of the treasury, in consideration of the premises, and by virtue of the power and authority to me given by the said last mentioned statute, do hereby decide to remit to the said petitioners, the right, claim and demand of the collector only to the said forfeitures and penalties, except one eighth part thereof, on payment of costs and of the duties on the part remitted. Given under my hand and seal, &c. the 29th day of July, A. D. 1814." The summary statement of facts here alluded to consisted solely of the petition of the claimant attested on oath, and the following certificate of the district judge: "District of Maine, February 24, A. D. 1814. Upon a summary examination now had upon this petition, in the presence of the attorney, Lee, and the collector of Bath, the only evidence offered to support the facts stated in it is the deposition of the petitioner, taken before William Stevenson, a notary public and justice of the peace for the county of Suffolk, hereunto annexed."

G. Blake and Mr. Preble, for the United States.

Prescott & Kinsman. for claimants.

STORY, Circuit Justice. The points involved in this discussion are of peculiar delicacy and embarrassment, inasmuch as they embrace considerations of the legal power and duties of one of the high officers of the government. It is not the duty of this court, and certainly it is not its inclination, to pry into the conduct of high executive officers with a jealous and scrutinizing eye. The court is, on the contrary, disposed to exercise towards them every liberality not inconsistent with the principles of law. Let it, however, be recollected, that ours is a government of laws and not of men; and that consequently every act of every officer, of the highest, as well as of every inferior grade, must be tried by the test of the law, and stand or fall, as that has dictated. The

power to remit penalties and forfeitures is one of the most important and extensive powers, which can be exercised under the government. It vitally affects the rights, the revenues, and the prerogatives of the United States. These cannot be waived, or extinguished, except in the cases and by the persons provided by law. The party, therefore, who sets up a treasury pardon, to purge away a forfeiture, must show that such pardon is within the purview of the powers confided to that department. I do not say, that every thing is to be proved to be done with the precision and accuracy of special pleading, or that a rigid adherence to forms is to be exacted. But there must be a substantial compliance with the requisites of the law.; and if, after every reasonable allowance, this cannot be found, the pardon must be adjudged to be inoperative.

I have come with these impressions to the consideration of this cause, and shall now proceed to examine the points, which have been made, with all the respect due to the talents and integrity of the late secretary of the treasury, and with all that firmness which befits the station, I have the honor to occupy. The counsel for the United States have introduced their argument with two propositions, which cannot well, upon legal principles, be doubted. The first is, that the power of the secretary of the treasury to remit penalties and forfeitures can be exercised only in the cases prescribed by law; and the second, that where he recites that the remission is granted by virtue of a special authority granted by a special statute, he cannot be presumed to have acted under any general authority granted by any general statute. The latter position has indeed been questioned at the bar; but I have not been able to perceive in what manner it has been, or can be, impugned. To adopt a contrary doctrine, would be to presume a fact, of which there is no evidence, against the express written declarations of the party; and might often lead to the most mischievous consequences. The present case affords an illustration of the propriety of the position. By the general act authorizing remissions (March 3, 1797, c. 67 [1 Story's Laws, 458; 1 Stat. 506, c. 13]), the secretary of the treasury can remit penalties and forfeitures, only when in his opinion the same shall have been incurred without wilful negligence or any intention of fraud. And, in my judgment, the argument is perfectly correct, that sufficient matter must be stated in a remission under this act, to show that the case is within its purview. It is a special authority, to be exercised only in given cases, and it must be shown on the face of the pardon, that in the opinion of the secretary, there has been no wilful negligence or intention of fraud; and such indeed has been the uniform practice under the statute. But it has never been considered, that it was compulsive up-

on the secretary to exercise this power; on the other hand, it has ever been deemed a subject submitted to his sound discretion. Very different is the statute (Feb. 27, 1813, c. 175 [2 Story's Laws, 1298; 2 Stat. 804, c. 33]) under which the secretary purports, in this case, to have acted. It is mandatory to the secretary to remit the penalties and forfeitures, where the facts of the cases are brought within the statute. If he is satisfied of the existence of such facts, he has no further discretion, but is bound to remit. The facts too required to be proved under this statute are very different from those under the statute of 1797. It is not necessary to be shown, that there was no wilful negligence. or intention of fraud. The only facts to be proved are, that the goods seized. were bona fide American property, at the time of their importation; that they were not clandestinely imported or introduced; and that they were imported or introduced since the declaration of war. There are other material differences in the powers given by these statutes, which might authorize and require a remission under the one, which could not be authorized or required under the other. To presume, therefore, an exercise of authority under the general statute, when it is recited to be under the special statute, would not only be a presumption against the fact, but a presumption in some cases, which would involve a violation of law.

The first objection to this treasury remission is, that it was made without any statement of facts, or competent evidence, according to the provisions of the statute, under which it purports to be granted. That statute requires the party to petition for relief to the judge proper to hear the same in pursuance of the act of 1797; and the facts shown on the inquiry before the said judge are to be stated and transmitted, as by the same act is required, to the secretary of the treasury. Nothing can be clearer, than that, by the act of 1797, the judge must state the facts, not merely the evidence of the facts, which appear upon the summary inquiry before him; and it is upon this statement of the facts, and this only, that the secretary is authorized to proceed. In the performance of this duty, the judge exercises judicial functions, and is bound by the same rules of evidence, as in other cases. The proof, therefore, of the facts must be by competent, as well as credible testimony; and he is to transmit a statement of the facts, as they judicially appear before him, and not the evidence, from which he draws a legal conclusion, as to the existence of those facts. Such a statement of facts is in the nature of a special verdict, or an agreed case; and, as there is no appeal allowed by law, it is not competent for any other tribunal collaterally to call in question the competency of the evidence, or the regularity of the proceedings, which preceded such state-

ment. It is conclusive upon all the parties. In the present case, however, there was no such statement of facts. The only evidence offered, to support the petition, was the oath of the party, which was manifestly incompetent in itself, and appears not to have been taken before the district judge. The learned judge does not pretend to give any opinion, as to its competency or credibility, or to certify any facts relative to the subject matter of the petition. The whole proceeding was as pure a nullity, as can well be imagined. The question then comes to this; whether the secretary of the treasury can remit, where no statement of facts has ever been transmitted to him? It is conceived, that but one answer can be given to the question, viz. that he cannot. If, notwithstanding, he should so do, it would deserve great consideration, whether it ought not to be held void, as having issued by mistake or upon false suggestions. Upon this point, however, I beg leave to reserve a decision, until it shall be necessary in judgment. To guard, however, against misapprehension, it is proper to add, that where such statement of facts is transmitted, the opinion of the secretary, as to their sufficiency to bring the case within the statute, is conclusive, and cannot be overhaled in any collateral inquiry.

The next objection is, that the secretary had no authority, under the act of 1813, to remit the forfeiture upon a part only of the goods; nor, under any statute, to remit the collector's share, eo nomine. By the act of 1797, the secretary is authorized to remit "upon such terms, or conditions, as he may deem reasonable and just," the whole or any part of any forfeiture within the purview of that act. And the same power is expressly given, as to all cases within the non-importation act. March 1, 1809, c. 91, § 18 [2 Story's Laws, 1114; 2 Stat. 528, c. 24]. The forfeitures under this last act are to be distributed in the same manner, as those under the collection act of 1799, c. 128 [1 Story's Laws, 573; 1 Stat. 627, c. 22], which in general gives (section 91) to the collector, and naval officer, and surveyor, if any there be, a moiety of the seizures made within the revenue district. But until final judgment or decree no absolute title vests in the collector. His right is merely inchoate, and when it is consummated by a final judgment, it becomes an indefeasible right. If, pending the proceedings, a remission be made of the whole property forfeited, his whole title is gone; if of a part only, his right attaches to the remainder, and by a judgment of condemnation becomes fixed and indissoluble. It is not therefore competent for the secretary to remit eo nomine the collector's share; for the law has expressly given him a moiety of all forfeitures recovered, and whatever may be the portion recovered, his right to the moiety thereof attaches. It is only by a remission of the whole forfeiture, that the collector's share can be

wholly defeated; and then it takes place by the mere operation of law. Under the acts of 1797 and 1809, therefore, this special remission could not be supported. And the other part of the objection seems equally well founded. The act of 1813, c. 175, contains no provision authorising a partial remission. It is directory to the secretary to remit all forfeitures within that statute, upon the simple condition of payment of the costs, charges and duties. It was not competent, therefore, for him to interpose any limitation or condition, beyond that which the law had expressed.

Another objection, which rides over all the others, is, that under the act of 27th of February, 1813, upon which the remission purports to proceed, the secretary had no authority whatsoever to grant the remission. This objection, if true, is in every possible view fatal. The importation in the present case is conceded on all sides to have been made in September, 1813, at least six months after the passage of the act. If therefore it be not prospective in its operation, it is very clear that the remission is utterly void. It seems to me, that upon no reasonable construction, consistent with the apparent intent or language of the statute, can it be deemed to apply to future cases. It speaks of goods, which had then been imported into the United States, and of penalties which had then been incurred; and directs the secretary to remit such forfeitures, if it should be proved to his satisfaction, that the goods, at the time of their importation, were (not, should be) American property, and were not (not, should not be) clandestinely imported or introduced, and that they were (not, should be) imported since the declaration of war. The language, therefore, obviously points to cases already past; and directs the prosecutions, if any shall have been (not, shall be) instituted, to be dismissed. The only words of the statute, on which to hang a doubt, are the words, which give the benefit of the act to goods, "which were shipped from the said kingdom (i. e. of Great Britain and Ireland) prior to the second of February, A. D. 1811." But these words are evidently used with reference to goods already imported, and which had already incurred a forfeiture, and must be explained by reference to a preceding act. The act of the 2d of January, 1813, c. 149 [2 Story's Laws, 1283; 2 Stat. 789, c. 7], directing the secretary to remit the forfeiture upon all goods, which had been imported from the kingdom of Great Britain and Ireland, and were shipped on board of vessels, which departed therefrom between the 23d of June, and the 15th of September, 1812. This act afforded a very limited relief, for there were many shipments made to ports in Nova Scotia, and other British colonies, with a view to be imported into the United States upon the repeal of the non-importation act, and which, since the war, had come directly

from thence into the United States. The act of the 27th of February, 1813, was designed to reach this very large class of cases. It is not, like the act of 2d of January, 1813, limited to importations direct from the United Kingdom, but to cases, "where goods, &c. have been imported or introduced into the United States from the dependencies of the United Kingdom, &c. since the declaration of war by the United States against the said kingdom, or which were shipped from said kingdom prior to the 2d of February, A. D. 1811." If the sentence had stopped here, there might have been some foundation for the argument, that this last clause might apply to future importations of goods so shipped. But it is immediately added, "whereby the person or persons interested in such goods, &c. or concerned in the importation or introduction thereof, hath or have incurred any fine, penalty or forfeiture, &c." Now no fine, penalty or forfeiture could by law have been incurred, under the non-importation act, by any shipment of goods from Great Britain prior to the 2d of February, 1811, unless they had been subsequently imported into the United States; for that act was not in force until after that day. It is plain, therefore, that the legislature, in this clause, meant to speak of goods, which had not only been shipped, but had been actually imported into the United States. Whether the word "or" is to be construed, as here used for the connective "and," and so operate as a qualification upon the preceding description of goods, or whether it is to be construed as a disjunctive, and so refer to goods not only imported from the British dependencies, but also from other places, if shipped before the 2d of February, 1811, is not now material to consider. It is sufficient, that the words, in their connexion, refer to importations already made, and that it is impracticable, in any other manner, to reconcile the other provisions of the statute. The consequence is, that the present importation was not within the purview of the statute, and the remission was made without competent authority.

Upon the whole, in every view of this subject, I am entirely satisfied that the remission is void and ineffectual. I cannot but regret, that it has fallen to my lot to pronounce this unwelcome sentence; but it is pressed upon me by duties, from which I am not at liberty to shrink, and which, I trust, I am incapable of betraying.

Let the decree of the district court be reversed, and the property be condemned to be distributed according to law. Condemned.

This case was carried by appeal to the supreme court, and afterwards the appeal was abandoned upon a compromise between the parties.