Mr. Justice CLIFFORD
 

 stated the case more particularly, prior to delivering, as hereinafter, the opinion of the court.
 

 Property owned by any person -who knowingly uses or employs the same, or who consents to the use or employment of the same in aiding, abetting, or promoting insurrection against the government of the United States, under the conditions specified in the first section of the act of the 6th of August, 1861, is declared by that act “ to be lawful subject of'prize and capture,” and all property purchased, acquired, sold, or otherwise transferred, with intent that the same may be ao used or employed, is also declared to be
 
 *455
 
 subject to.the same proceedings, and the provision is, that it shall be the duty of the President to cause the.same to'be seized, confiscated, and condemned.
 
 *
 

 Proceedings for the condemnation of such property may be instituted by the Attorney-General, or by any district attorney for the district in which the property is situated at the time the proceedings are commenced, and the third section provides, that in such cases “ the proceedings are wholly for the benefit of the United States;” but the same section also provides, that “ any person may file an information with such attorney, in which case the-proceedings shall be for the use of such informer and the United States in equal parts.”
 

 Pursuant to those provisions libels of information were filed in these cases by the district attorney of the United States for the Eastern District of Louisiana, in the Circuit Court of the United States for that district, in which it was alleged that the steamer Eleanor was seized on the 15th of June, 1865, and that the steamer Trent was seized on the 80th of June in the same year..
 

 Apart from the names of the vessels, aud the time when the respective seizures were made, the allegations of the libels are similar in every respect material to this investigation. They were .addressed to. the judges of the Circuit Court for that district, and the introductory allegation in each states that the district attorney prosecutes for the United States, and in the name and behalf of the United States and Charles Black, informant, against the respective steaiqers, their tackle, apparel, and furniture, and the prayer of the respective libels is for process of monition, order of publication, and for a decree of condemnation to the use and ownership of the United States and of the informant.
 

 Both steamers were seized, and process was served in each ease; but the steamers were afterwards released by the order of the court, made at the request of the claimants, who respectively gave bonds for their appraised value. Subsequent proceedings in the..two cases were in all respects
 
 *456
 
 the same, except that the decree in the first case was for the claimants, and in the second for the United States, and the losing party in each case appealed to thi,s court. Other appeals in like cases were entered in this court at the same term, and they have remained .on the calendar to the present time;
 

 Early in the present term some of the cases were heard upon,the merits; but these cases now come before the court on certain motions made in behalf of the United States by the Attorney-General. His motion in the first case is for leave to dismiss the libel of'information; and in the second ease, his proposition is to the effect that the decree of the Circuit Court, which was in favor of the United States, shall be reversed, and the cause remanded, with a view that the same may bé dismissed in the court where the suit was instituted. When the motions were made they were taken under advisement; but the court subsequently decided that the motions ought to be granted, unless the informer desired to be heard in opposition to the discontinuance of the prosecutions. Since that time the informer has been heard,
 
 *
 
 and the court has come to the conclusion that the respective motions must be-grantéd.
 

 Provision was made by the thirty-fifth section of the Judiciary Act for the appointment of an attorney of the United States in each district, and the .same section makes it his duty to prosecute in such district all delinquents for crimes and offences cognizable under the'authority of the United States, and all civil actions in which the-United States, shall be concerned, except before the Supreme Court, in the district in which that court shall be holden.
 
 †
 

 In the prosecution of suits in the name and for the benefit of the United States, the seventh section of the act of the 15th of May, 1820, provided that the district attorneys should conform to such'directions and instructions as the}’
 
 *457
 
 should receive from the agent of the treasury; but the first section of the act of the 2d of August, 1861, devolves the general superintendence and direction of district attorneys, as to the manner of discharging their respective duties,' upon ' the Attorney-General of the United States.
 
 *
 

 Public prosecutions, until they come before the court to which they aré returnable, are within the exclusive direction of the district attorney, and even after they are entered in court, they are so far under his control that he may enter a
 
 nolle prosequi
 
 at any time before the jury is empanelled for the trial of the casé, except in cases where it is otherwise provided in some act of Congress.
 

 Civil suits, in the name and for thé benefit of the United States, are also instituted by the district attorney, and, in the absence of any directions from the Attorney-General, he controls the prosecution of the same in the district and circuit courts, and may, if he'sees fit, allow the plaintiffs to become nonsuit, or consent to a discontinuance.
 

 Settled rule is that those courts will not recognize any suit, civil or criminal, as regularly before them, if prosecuted in the name and for the benefit of the United States, unless the samé is represented by the district' attorney, or some one designated by him to attend to such business, in his absence, as.may'appertain to the duties of his office.
 
 †
 

 Under the rules of the common law it must be conceded that the prosecuting party may relinquish his suit at any stage of it, and withdraw from court at his option, and without other liability to his adversary than the payment- of taxable costs which have accrued up to the time when he withdraws his suit.
 
 ‡
 

 Precisely the same rule prevails in the admiralty courts, and consequently the libellant has" the right at any -stage of
 
 *458
 
 the cause voluntarily to discontinue the same, and the only penalty to which he can legally be subjected, in the absence of a.ny statutory regulation, except, perhaps, in prize cases, is the payment of the costs of the proceedings.
 
 *
 

 Although the name of the informer in these cases is mentioned in the libel of information, still it is nevertheless true that the suit was instituted by the' district attorney in the name and for the benefit of the United States. Control of ■these suits, therefore, while they were\peudiug in the Circuit Court, belonged to the district attorney under the general superintendence and direction of the Attorney-General, and he might, if he had scon fit, have discontinued them at any stage of the proceedings prior to the appeals. Such control on the part of the district attoimey ceases whenever such a suit, civil or criminal) is transferred to this court by writ of error, appeal, or certificate of division of opinion, as the thirty-fifth section of the Judiciary Act also provides, that it shall be the duty of the Attorney-General to prosecute and conduct all suits in the Supreme Court in which the United States shall be concerned, and such has been the unbroken practice of this court in such suits from the organization of the judicial system to the present time. Appointed, as the Attorney-General is, in pursuance of au act of Congress, to prosecute and conduct such suits, argument would seem to be unnecessary to prove his authority to dispose of these cases .in the'manner proposed in the respective motions under consideration, but if more be needed, it will be found in the case of
 
 The Gray
 
 Jacket,
 
 †
 
 in which this court decided that in such suits no counsel will be heard for the United States in opposition to the views of the Attorney-General, not even when employed in behalf of another of the executive departments of the government.
 

 Whether tested, therefore, by the requirements of the Judiciary Act, or by the usage of the government, or by the decisions of this court, it is clear that all such suits, so far as the interests of the United States are concerned, are
 
 *459
 
 subject to the direction, and within the control of, the Attorney-General.
 

 Objection is made'to the granting of the motions,-in these-eases, upon the ground that it would impair the vested rights of the informer, mentioned in the respective libels of information. Argument for the informer is, that the allegations of the libels afford-presumptive evidence that he filed the informations with the district attorney, and that the third section of the act provides that, in that state of the case, the proceedings shall be for the use of such informer, and the United States, in equal parts. Perhaps the better opinion is, that the allegations of the libels, in case of condemnation, would afford
 
 primá facie
 
 evidence that the person therein named, as the informer, is entitled to be regarded in that character; but the more important inquiry in this case is, whether he possesses any such interest in the property seized,, befoi’e final condemnation, as will prevent the Attorney-General from dismissing the suits, as proposed in the .motions? Much aid will be derived, in the solution of that question, by a comparison of the third section of the act, invoked,as supporting the viqws of the informer, with similar provisr ions in other acts of Congress, upon analogous subjects. Regulations were prescribed for the distribution of fines, penalties, and forfeitures, in the first act passed by Congress for the collection of maritime duties, including forfeitures arising from seizures on navigable waters, as well as on land, and the same provisions, in substance and effect, were incorporated into the act of the 2d of Márch, 1799, which for many • purposes, remains in force to the present time.
 
 *
 

 Those regulations direct that one moiety of the fines, penalties, and forfeitures recovered by those acts, after deducting- all proper costs and charges, shall be paid into the treasury, and that the other shall, in certain eases, be divided, in equal proportions, between the collector, naval officer, and surveyor of the port; ’and, in other cases, that one-half of that moiety shall be given tp, the informer, and
 
 *460
 
 the remainder only to the officers of the customs. Such fines, penalties, and forfeitures were required by those acts to be sued for and recovered in the name of the United States, in any court competent to try and determine the controversy.
 

 Questions of various kinds arose in the construction of those regulations, especially in cases where the claims of informers came in conflict with the assumed lights of subsequent purchasers, and with the action of the Secretary of the Treasury, in- remitting such forfeitures uuder the act of Congress conferring that power upon the head of that department.
 
 *
 

 Difierences of. opinion existed among the justices of this court, whether a forfeiture under those provisions, or others .of like character, gave 'such a title to the United States as to overreach a
 
 bond fide
 
 sale to an innocent purchaser, when made before seizure and suit for condemnation, but the majority of the court adopted the affirmative of that proposition.
 
 †
 

 No one, however, contended that any such rule could be applied, .in any way, except by relation back to the criminal offence, in cases where the title had been .consummated by seizure, suit, and judgment, or decree of condemnation. Next controversy arose between the collector and the heirs-at-law of his predecessor, in a case where the seizure had been made by the latter, in his lifetime, and while he wras in office, but the decree of condemnation was not entered' till after his decease, and the appointment of his successor. Payment of the amount, as ordered in the decree of distribution, was made to the collector in office at the date of the decree, but the court .held that the money belonged to his predecessor, in consequence'
 
 6t
 
 the inchoate right which he acquired, by virtue of the seizure, and the incipient steps taken by' him to cause the suit to be instituted.
 
 ‡
 

 
 *461
 
 Express ruling of the court in that case was, that the right of the collector to forfeitures
 
 in
 
 rem,, attached On the seizure, but that the right must be defined and consummated by the judgment or decree. Authority to remit such fines, penalties, and forfeitures, was conferred upon the1 Secretary of the Treasury, by the act of the 3d of March, 1797, and the next important controversy which arose upon the .subject, was as to the extent of that authority, and whether the secretary could remit the share of the informer, or that' of the officers of the customs,'subsequent to the judgment or final decree.
 

 Just prior to the decision, in the case of
 
 Jones
 
 v.
 
 Shore’s Exrs.,
 
 Judge Story-ruled, in the Circuit Court, that the right of the collector, antecedent to the judgment or decree, was merely inchoate, but he added, what was not neeessai’y to the decision of 'the case, that- his right to the forfeiture vested absolutely with the final sentence of condemnation, and that, after judgment, it could not be remitted by the Secretary of the Treasury.
 
 *
 

 Unguarded expressions, supposed to support the same conclusion, are also employed in some of the prior, as well as subsequent, decisions of this court.
 
 †
 

 Doubts ai’ose whether the secretary could remit a forfeiture- or penalty, accruing under the -several acts, subsequent to the final decree or judgment, but those doubts were soon removed by a unanimous decision of this court, and one which is characterized by accurate .analysis, clear statement, and sound conclusions.
 
 ‡
 

 Merchandise was imported into the United States in violátion of the non-intercourse act then in force, and the vessel and cargo were seized'on that account, and were afterwards condemned as forfeited. Subsequent to the decree of condemnation, the- Secretary of the Treasury remitted the whole' forfeiture, and this court held that he did not exceed his
 
 *462
 
 authority; that neither the rights of the informer, nor the rights of the collector, or other officers of the'customs, were violated in the case; that their rights were conditional, and subordinate to the power of remission; and that the secretary had authority, under that act, to remit a forfeiture, at any time, before or after a final decree or judgment, until the money was. actually paid over to the collector for distribution, and-that the power to remit'extends not only to the interest of the United States,'in the forfeiture, but also to the share of the informer, and that of the officers of the customs.
 

 Informations,- to recover municipal forfeitures,-' whether the seizure was made on navigable waters or on land, must be instituted in the name of the United States, and they must be prosecuted,- in the subordinate courts, by the district attornéy, and in this court, when brought here by appeal, or by writ .of error, by the Attorney-General. Where the seizure was made on navigable waters, the case belongs to the instance -side of the. subordinate-court; but where the seizure was made on land, the suit is one at common law, and the claimants are entitled to a trial by jury.
 
 *
 

 Mention of the name of the informer, in the information, in such cases, is not necessary, as he is not a party to the suit, nor is he entitled to be -heard, as such, in any stage of the proceedings. He cannot institute the suit, nor move for process, nor joinf in the pléadings, nor take testimony, nor except to the ruling of the court, nor sue out a writ of error, or take an appeal. Judgment is for the claimants, op for'the United States, and if for the latter, and the claimants do not remove the cause into this court for revision, it then becomes the duty of the court to 'render the decree for distribution. Prior to such a decree, the interest of the informer is conditional, and under the decisions of this-» court it continues to be so until the money is paid over, as required by law.
 
 †
 

 
 *463
 
 Viewed in any light, it is quite clear that tlie informer,' in these cases, has no vested interest in tbe subject-matter of these suits, and that both motions ought to be
 

 Granted.
 

 The order in tbe first case is, that it be dismissed, ttml that order also disposes of Nos. 26, 27, 28, 29, 30, and 33, 34, and 35.
 

 Order in the second ease is, that tbe decree be reversed, as stipulated by tbe parties, and that tbe cause be remanded, with directions to dismiss the libel of information; and. this order also disposes of Nos. 44, 46, 48, 63, and 64, on tbe calendar.
 

 [See supra, 166, Dorsheimer
 
 v.
 
 United States.]
 

 *
 

 12 Stat. at Large, 319.
 

 *
 

 He was represented here by Messrs. 0. Cushing and B. Butler.- Kkp,
 

 †
 

 1 Stat. at Large, 92.
 

 *
 

 3 Id. 596; 12 Id. 285.
 

 †
 

 11 Stat. at Large, 51; Levy Court
 
 v.
 
 Ringgold, 5 Peters, 454; United States
 
 v.
 
 Corrie, 23 Law Rep. 145; United States
 
 v.
 
 Stowell, 2 Curtis, 153; United States v. McAvoy, 4 Blatchford, 418; The Peterhoff, Blatch Prize Cases, 463; The Anna, Ib. 337.
 

 ‡
 

 1 Tidd’s Practice, 628.
 

 *
 

 The Oriole, Olcott, 67.
 

 †
 

 5 Wallace, 370.
 

 *
 

 1 Statutes at Large, 48, 697.
 

 *
 

 1 Statutes at Large, 506, 626.
 

 †
 

 United States
 
 v.
 
 Bags of Coffee, 8 Cranch, 404; The Mars, Id. 417.
 

 ‡
 

 Jones
 
 v.
 
 Shore’s Exrs., 1 Wheaton, 468.
 

 *
 

 The Margaretta, 2 Gallison, 515.
 

 †
 

 Van Ness v. Buel, 4 Wheaton, 74.
 

 ‡
 

 United States
 
 v.
 
 Morris, 10 Wheaton, 281.
 

 *
 

 3
 
 Greenleaf on Evidence, § 396; 1 Kent’s Com. (11th ed.), 337; The Sarah, 8 Wheaton, 394; Armstrong’s Foundry, 6 Wallace, 769.
 

 †
 

 United States
 
 v.
 
 Morris, 10 Wheaton, 290.