## NEW ORLEANS NAT. BANK *v.* MERCHANT.[1]

*(Circuit Court, E. D. Louisiana. January 5, 1884.)*

1. JURISDICTION—REMOVAL OF CAUSES—ACT OF MARCH 5, 1875—REV. ST. § 3833.
   Section 3833 of the Revised Statutes confers jurisdiction upon the courts of the state, in certain instances, as courts of the state, but does not thereby make them federal courts; and cases instituted in the state courts, under the authority of section 3833, are removable to the circuit courts of the United States under the provisions of the second section of the act of March 3, 1875.

2. REGISTERED LETTERS AND MONEY ORDERS—REV. ST. §§ 3926, 4027, 3929, 4041.
   The effects of the provisions of sections 3926, 4027, 3929, and 4041 of the Revised Statutes is, that when the postmaster general is satisfied that any one is engaged in one of the schemes or enterprises described in the statutes, the person so engaged (while ordinary mail is open to him, as to all others, for the receipt or transmission of ordinary mail matter) shall not be entitled to receive through the mail either the registered letters or money orders provided for in the law; and that as long as the postmaster general is not satisfied that any one is engaged in one of the schemes or enterprises described in the statutes, so

[1] Reported by Joseph P. Hornor, Esq , of the New Orleans bar.

long the use of the registered-letter and money-order systems cannot be re-
fused.   The fair import of the law is that a deprivation of the registered-letter
and money-order systems shall only continue while the offending party is en-
gaged in one of the schemes or enterprises described in the statutes, and while
the postmaster general is satisfied such party is so engaged.

3. JURISDICTION TO CONTROL ACTS OF EXECUTIVE OFFICER.
     Where the act of the officer is one of mere ministerial duty, it may be con-
trolled or compelled by the courts; where the act involves the exercise of judg-
ment or discretion, the courts cannot interfere to compel or prevent.

4. POWERS OF POSTMASTER GENERAL.
     The postmaster general may, upon evidence satisfactory to him that any
person is engaged in conducting any fraudulent lottery, gift enterprise, or
scheme, for the distribution of money or of any real or personal property, by
lot, chance, or drawing of any kind, or in conducting any other scheme or de-
vice for obtaining money through the mails by means of false or fraudulent
pretenses, representations, or promises, lawfully forbid to such person so en-
gaged the use of the registered-letter and money-order systems; but he may
not lawfully forbid such use on any other grounds, either of motive or con-
duct.

## On Motions to Remand and to Dissolve the Injunction.

This suit was instituted in the civil district court of the parish of
Orleans, on a petition, verified by affidavit, setting forth, in substance,
that the complainant is chartered and carrying on a large banking
business under the national-banking laws of the United States, and
has important connections with other banking institutions and per-
sons throughout the United States, with whom it is necessary to
maintain communication, which can only be done through the United
States mail; that a large part of its business consists in sending to
and receiving from its various correspondents, sums of money, bonds
and securities, and valuable papers, and which can only be transacted
safely by and through the United States mails, by means of regis-
tered letters and money orders; that it has been and is constantly
in receipt of postal money orders and registered letters through the
mails at the New Orleans post-office; and that to deprive it of the
use of the registered-letter and money-order system at that office
would work it irreparable injury, and damage it to the extent of many
thousand dollars.   Also, that the defendant is postmaster at New
Orleans, and as such is in charge of all the mails, and the contents
thereof, arriving at the New Orleans post-office, including all mail
matter addressed to complainant, and all money orders and regis-
tered letters, large numbers of which are now on the way in the said
mails, addressed to complainant, and large numbers thereof will con-
tinue to be sent; that without any charge having been made any-
where against complainant, and without any formal or other notice,
and without hearing, or opportunity to be heard, anywhere, by coun-
sel or otherwise, said defendant intends to, and has threatened to,
and will, unless prevented, in defiance of all law, without any just or
legal cause, without warrant or authority, or any process of law, what-
ever, detain by force, and refuse to deliver to petitioner, such regis-
tered letters as may be received for petitioner through the mails, and
refuse to pay such money orders as may be received by petitioner,

payable at the New Orleans post-office, to the great damage, etc.; and that a writ of injunction is necessary; that complainant has the right, under the constitution and laws of the United States, to the use of the mails to send and receive mail matter, and to be protected in its papers, property, and effects, while the same are in course of transportation through the mails, from illegal and unreasonable searches and seizures, without warrant; and that complainant cannot be deprived of its property while the same is in course of transportation in the mails, without due process of law.

A prayer was made for a writ of injunction enjoining and restraining defendant from detaining or refusing to deliver to petitioner the registered letters that may come addressed to petitioner through the mail to the New Orleans post-office, and from refusing to pay such postal money orders as may be presented at said office at New Orleans, drawn in favor of petitioner and made payable at said office, and the usual prayer for citation, due proceedings, that the injunction be perpetuated for general relief, etc. The injunction was granted as prayed for, on a bond for $1,000. After service on defendant, he appeared in the civil district court and filed his petition and bond for the removal of the cause to this court, and the cause was thereupon removed here, on the ground that the same is one arising under the laws of the United States. In this court the defendant moved to dissolve the injunction on grounds to be filed, and thereafter filed a sworn answer, and the same has been taken as assigning the grounds for the dissolution asked for, in substance, to-wit: Admitting the intention to refuse complainant delivery of registered letters addressed to it, and to refuse to pay to complainant money orders payable to it, setting forth as authority for so refusing, the orders and findings of the postmaster general of the United States, as follows: On the twelfth of November, 1879, the postmaster general issued the following order:

"It having been represented to me that a certain M. A. Dauphin, at New Orleans, La., is engaged in conducting a scheme or device for obtaining money through the mails by means of false and fraudulent pretenses, representations and promises, and being satisfied from the evidence before me that the said M. A. Dauphin is so engaged, I do hereby forbid the payment by the postmaster at New Orleans, La., of any postal money order drawn to the order of said M. A. Dauphin, or M. A. Dauphin, secretary, or M. A. Dauphin, post-office box 692; and the said postmaster is hereby directed to inform the remitter of said postal money order that the payment thereof has been forbidden, and that the sum of said money order will be returned upon the presenting of a duplicate money order, applied for and obtained under the regulations of the department. And, upon the same evidence, the postmaster at New Orleans aforesaid, is hereby instructed to return all registered letters which shall arrive at his office directed to the said M. A. Dauphin, M. A. Dauphin, secretary, or M. A. Dauphin, post-office box 692, to the postmasters at the offices at which they were originally mailed, with the word 'fraudulent' plainly written or stamped upon the outside of such letters."

And on February 27, 1880, the following order:

"Post-Office Department, Washington, D. C., Feb. 27, 1880.

"Sir: On the thirteenth of November, 1879, I issued an order addressed to you, forbiding the payment of any postal money order to M. A. Dauphin, secretary, or M. A. Dauphin, post-office box 692, and 319 Broadway, New York, and the return of all registered letters addressed to them, to the postmasters at whose office they were mailed.

"This party having brought suit against me to enjoin the performance of this order, and having appealed the same to the supreme court of the United States, and having this day presented the certificate of the governor and state officers of the state of Louisiana that he has complied with all the legal requirements of that state, and other evidence, *and not being satisfied* from the evidence submitted to me that the said M. A. Dauphin is engaged in conducting a scheme or device for obtaining money through the mails by means of false or fraudulent pretenses and promises, I hereby authorize and direct the suspension of said order of November 13, 1879, so far as it relates to said Dauphin, until the case shall have been heard and determined by the supreme court of the United States.

[Signed] "D. M. Key, Postmaster General.

"To Postmaster, New Orleans, La., and to Postmaster, New York, N. Y."

And on September 20, 1883, the following order, modifying and enlarging one of the same purport issued on the fourteenth of September, 1883, to wit:

"It appears from the records of the department that on the thirteenth day of November, 1879, Postmaster General Key, upon evidence satisfactory to him, entered a written finding that M. A. Dauphin was engaged in conducting a scheme or device for obtaining money through the mails by means of false and fraudulent representations; and it also further appearing that said Postmaster General Key entered an order, based upon said finding, prohibiting the postmasters at New York and New Orleans from paying money orders drawn to the order of the said Dauphin, and the delivery of registered letters addressed to him; therefore, in pursuance of the finding of Postmaster General Key, which finding remains in full force, it is ordered, that all postmasters be and they are hereby forbidden to pay money orders drawn to the order of M. A. Dauphin, and they are hereby directed to inform the remitters of said postal money orders that the payment thereof has been forbidden, and that the sum of such money orders will be returned upon the presentation of duplicate orders applied for and obtained under the regulations of the department. All postmasters are also forbidden to deliver registered letters arriving at their offices, directed to the said M. A. Dauphin, and are instructed to return all such registered letters to the postmasters at the offices at which they were originally mailed, with the word 'fraudulent' plainly written or stamped upon the outside of such letters.

"W. Q. Gresham, Postmaster General."

And on the nineteenth of September, 1883, the following letter and order, to wit:

"Sir: Since you were instructed to deliver no registered letters reaching your office addressed to M. A. Dauphin, and to redeem no money orders payable to him, he has directed in an advertisement inserted in certain newspapers that all registered letters intended for him and concerning the Louisiana State Lottery Company be addressed to the New Orleans National Bank at New Orleans, and that all money orders sent to your office for his benefit and concerning the business of said lottery company, be made payable to said bank. I am in possession of trustworthy information that this

bank has been and still is receiving through your office registered letters and money orders for the benefit of M. A. Dauphin, in pursuance of his public directions. This is a defiant scheme on the part of M. A. Dauphin and the New Orleans National Bank to evade the orders which have been addressed by the postmaster general, in pursuance of the statute of the United States intended to protect the mails and the public against a business which is vicious and immoral, and which, in the main, preys upon the ignorant and credulous. This bank cannot be permitted to stand in the shoes of M. A. Dauphin, and thus enable him to accomplish by indirection what he is not allowed to do directly. Hereafter, therefore, you will deliver to the New Orleans National Bank no registered letters and redeem no money orders payable to it; but deal with the same as directed by the order of this department of November 13, 1879.

"This order will be revoked whenever the bank gives satisfactory evidence that it has abandoned the above scheme. Very respectfully,
"W. Q. GRESHAM, Postmaster General."

Further answering, defendant denies the jurisdiction of the state court to issue said injunction, or of this court to maintain it, and insists that the action of the postmaster general in issuing the said orders, or the action of defendant in executing them, cannot be reviewed or controlled by any court. And on the hearing, the complainant has submitted affidavits of its president and counsel bearing on the various proceedings and orders of the postmaster general in the matter of one M. A. Dauphin, as to hearing and evidence, and the president's affidavit, containing this statement:

"That the New Orleans National Bank is not now, and never has been, the agent of M. A. Dauphin, the person or individual referred to in the order of Postmaster General Key, dated November 13, 1879; that said bank has not any time received for or on account of said Dauphin any registered letters or money orders whatever; that said bank has in no manner participated in the conducting of any scheme or device for obtaining money through the mails by means of false or fraudulent pretenses, representations, or promises."

On the hearing, the complainant filed a motion to remand the cause, on the ground that it was not removable under any law of the United States. The case has been heard on the motion to dissolve the injunction and the motion to remand.

*Jeff. Chandler, Charles W. Moulton, Thomas I. Semmes,* and *Joseph P. Hornor,* for complainant.

*B. H. Brewster,* Atty. Gen., *Wm. A. Maury, A. A. Freeman,* Asst. Atty. Gen., and *Albert H. Leonard,* U. S. Atty., for defendant.

PARDEE, J. Naturally the first question to be passed upon is motion to remand to the state court. That the suit is one of a civil nature in equity, where the matter in dispute exceeds, exclusive of costs, the value of $500, and arises under the laws of the United States, is not disputed. That the suit thus comes directly under the provisions of the second section of the act of congress, approved March 3, 1875, is sought to be avoided by the argument that as congress, by section 3833, Rev. St., has authorized the institution and prosecution of all causes of action arising under the postal laws, before the courts of the several states having competent jurisdiction by the laws thereof,

of demands of as great value, and as this suit was thereunder instituted in the state court of Louisiana, that court became, and was for this case, a federal court; so that to this case the act of 1875, *supra*, does not apply. To this argument it is only necessary to show that the act of 1875 provides for no exception; that said act was passed subsequent to the Revised Statutes; and that section 3833, Rev. St., confers jurisdiction upon the courts of the state, if they please to accept, in certain instances, as courts of the state, and because they are courts of the state. The view of the law claimed would cut off all appeals and writs of error in all actions thus brought, and we would see by construction state courts vested with larger federal jurisdiction, in certain cases, than federal courts themselves. If the state court *pro hac vice* becomes under section 3833 a federal court and ceases to be a state court, the writ of error allowed by section 709, Rev. St., by which the supreme court may revise judgments and decrees of the highest court of a state, would also fail, and the supreme court would lose its jurisdiction, or else be compelled to allow an appeal or writ of error from an inferior state court, over which it would not have enough control to compel a transcript or stay a judgment.

The several orders and findings of the postmaster general relied upon by defendant to justify his action have been set forth. The following legislation contained in Revised Statutes is relied upon to justify the action and exclusive control of the postmaster general in the premises:

Sec. 3926. "For the greater security of valuable mail matter, the postmaster general may establish a uniform system of registration. But the post-office department or its revenue shall not be liable for the loss of any mail matter on account of its having been registered.

Sec. 4027. "To promote public convenience, and to insure greater security in the transfer of money through the mail, the postmaster general may establish and maintain, under such rules and regulations as he may deem expedient, a uniform money-order system, at all suitable post-offices, which shall be designated as ' money-order offices.'

Sec. 3929. "The postmaster general may, upon evidence satisfactory to him that any person is engaged in conducting any fraudulent lottery, gift enterprise, or scheme for the distribution of money or of any real or personal property, by lot, chance, or drawing of any kind, or in conducting any scheme or device for obtaining money through the mails by means of false or fraudulent pretenses, representation or promises, instruct postmasters at any post-offices at which registered letters arrive directed to any such person, to return such registered letters to the postmasters at the offices at which they were originally mailed, with the word 'fraudulent' plainly written or stamped upon the outside of such letters; and all such letters so returned to such postmasters shall be by them returned to the writers thereof, under such regulations as the postmaster general may prescribe. But nothing contained in this title shall be so construed as to authorize any postmaster or other person to open any letter not addressed to himself.

Sec. 4041. "The postmaster general may, upon evidence satisfactory to him that any person is engaged in conducting any fraudulent lottery, gift enterprise, or scheme for the distribution of money, or of any real or personal property, by lot, chance, or drawing of any kind, or in conducting

any other scheme or device for obtaining money through the mails by means of false or fraudulent pretenses, representations or promises, forbid the payment, by any postmaster, to any such person of any postal money order drawn to his order or in his favor, and may provide by regulations for the return to the remitter of the sums named in such money orders. But this shall not authorize any person to open any letter not addressed to himself."

The effect of these provisions is that as long as the postmaster general is satisfied that any one is engaged in one of the schemes or enterprises described in the statute, the person so engaged, while ordinary mail is open to him, as to all others, for the receipt or transmission of ordinary mail matter, shall not be entitled to receive through the mail either the registered letters or money orders provided for in the law. See case of *Dauphin* v. *Key, Postmaster General*, decided by the supreme court, District of Columbia. And I take it to be equally clear that so long as the postmaster general is not satisfied that any one is engaged in one of the schemes or enterprises described in the statute, so long the use of the registered-letter and money-order systems cannot be refused. In other words, the use of those systems is the right of every person so desiring, upon compliance with the law, and no one can be deprived of this privilege without he has abused the same, of which abuse, under the law, the postmaster general is to determine. In fact, so far as registered letters are concerned, it is a criminal offense for any postmaster to detain unlawfully any mail matter, the posting of which is not prohibited by law. Rev. St. § 3890.

The case of *Dauphin* v. *Key, supra*, decides that the foregoing statutes giving authority to the postmaster general to determine upon evidence satisfactory to him whether any person is engaged in one of the schemes or enterprises described, and thereupon to forbid the use of the registered-letter and money-order systems is constitutional, and that the order of November 12, 1879, is in conformity with the law. To this I agree, and I refer to the learned opinion rendered in that case by Justice Cox, as the organ of the court, as an answer to all the arguments addressed to me on this hearing on the constitutionality of said laws. Every point raised here on that question seems to have been passed on by Justice Cox.

The difficult questions in this case arise after all doubts about the constitutionality of the law and the validity of Postmaster General Key's first order are resolved. A comparison of the said orders and findings with the law shows that only in that of November 12, 1879, does the postmaster general find "upon evidence satisfactory to him," or at all, that any person is engaged in any of the schemes or enterprises described in the statute. The order of November 12, 1879, specifically finds that the postmaster general is satisfied from the evidence that M. A. Dauphin is engaged in conducting a scheme or device for obtaining money through the mails by false and fraudulent pretenses, representations, and promises. The order of February 27,

1880, specifically finds that the postmaster general *was not satisfied,* from the evidence submitted to him, that said Dauphin was engaged in conducting a scheme or device for obtaining money through the mails by means of false or fraudulent pretenses and promises. Order No. 18 finds no fact except that Postmaster General Key had made and entertained a finding as recited in the order of November 12, 1879, and that the same finding remains in full force, the latter being a conclusion of the law. The order of September 19, 1883, which particularly concerns the complainant, may be said to find three facts: (1) That Dauphin had directed, in an advertisement inserted in certain newspapers, that all registered letters intended for him and concerning the Louisiana State Lottery Company be addressed to the New Orleans National Bank at New Orleans, and that all money orders sent to the New Orleans office for his benefit and concerning the business of said lottery company to be made payable to said bank. (2) That the bank has been and is still receiving through the New Orleans office registered letters and money orders for the benefit of M. A. Dauphin, in pursuance of his public directions. (3) That the foregoing was a defiant scheme on the part of M. A. Dauphin and the New Orleans National Bank to evade the orders of the postmaster general addressed to the New Orleans office in relation to Dauphin's mail.

It seems to me to be very doubtful whether the order and finding of February 27, 1880, merely suspended the order and finding against Dauphin of November 12, 1879; it rather appears to amount to an absolute revocation, and, for these reasons, the fair import of the law is that a deprivation of the registered-letter and money-order system shall only continue while the offending party is engaged in one of the schemes or enterprises described in the statute, and while the postmaster general is satisfied such party is so engaged. As the postmaster general ceased to be satisfied, and so found and certified, what so natural as that the order, founded solely upon his being satisfied, fell to the ground. The law gives to the postmaster general no authority to suspend action. Upon evidence satisfactory to him, he must act. See *Sup'rs* v. *U. S.* 4 Wall. 435. Without evidence satisfactory to him, the law gives him no right to act. When Postmaster General Key ceased to be satisfied on the evidence submitted, he had no authority to suspend, but he did have authority, and it was his duty, to revoke, and therefore it is fairly to be presumed that his action of February 27, 1880, was a revocation. If the order was not revoked in terms, the finding on which it was based was revoked, and the result is necessarily the same. It is true that the present postmaster general, in an opinion found in this record, decides that such an order was only a suspension; but his predecessor, also a distinguished lawyer, was of the contrary opinion, and so reported to the house of representatives, and his report clearly shows that, in his opinion, before Dauphin could be further prohibited, it was nec-

essary that the postmaster general should be again satisfied upon evidence, and find that Dauphin was engaged in a scheme in violation of the statute. The last order and finding, being the letter of the postmaster general directed against the complainant herein, is upon trustworthy information, which, however, is not satisfactory evidence, but it finds no fact against either Dauphin or the complainant denounced by the law.

The schemes denounced by the law are, "or schemes for the distribution of money, or of real or personal property, by lot, chance, or drawing of any kind, or in conducting any other scheme or device for obtaining money through the mails by means of false or fraudulent pretenses, representations, or promises." The scheme found against complainant, in which it is engaged, and the sole basis of the order against it, is a scheme to evade the orders of the postmaster general in relation to Dauphin's mail. This is patent on the face of the paper, for the order ends: 'This order will be revoked whenever the bank gives satisfactory evidence that it has abandoned the above scheme.' To repeat, the order prohibiting the use of the registered-letter and money-order system to Dauphin is of doubtful validity and force, because it has once been suspended or revoked, and because there is no finding *in esse* of any postmaster general, upon satisfactory evidence, or upon any evidence, that Dauphin is engaged in any scheme or enterprise denounced by law. The postmaster general did at one time so find, but he, afterwards, has publicly declared himself not satisfied. Postmaster General Howe and his successor, the present postmaster general, have each considered the matter, but each has conspicuously failed to find the fact that would undoubtedly give validity to the prohibitory order. The facts found against the New Orleans National Bank, no matter how reprehensible they may be, are outside of the law, and the order against it, no matter how necessary it may be in order to enforce the orders against Dauphin, is unsupported by law.

To support the right to investigate these orders and determine their force and authority, I deem it necessary to refer only to the decision of Judge STORY in the case of *The Margaretta,* 2 Gall. 515. In that case, which turned upon the authority and conduct of the secretary of the treasury in remitting penalties and forfeitures incurred under the non-importation acts, and where it was declared to be mandatory to the secretary to remit the penalties and forfeitures if the facts of the case were brought within the statute, Judge STORY said:

"The points involved in this discussion are of peculiar delicacy and embarrassment, inasmuch as they embrace considerations of the legal power and duties of one of the high officers of the government. It is not the duty of this court, and certainly it is not its inclination, to pry into the conduct of high executive officers with a jealous and scrutinizing eye. The court is, on the contrary, disposed to exercise towards them every liberality not inconsistent with the principles of law. Let it, however, be recollected that ours is

a government of laws and not of men; and that consequently, every act of every officer of the highest as well as of every inferior grade, must be tried by the test of the law, and stand or fall as that has dictated. The power to remit penalties and forfeitures is one of the most important and extensive powers which can be exercised under the government. It vitally affects the rights, the revenues, and the prerogative of the United States. These cannot be waived or extinguished except in the cases and by the persons provided by law. The party, therefore, who sets up a treasury pardon to purge away a forfeiture, must show that such pardon is within the purview of the powers confided to that department. I do not say that everything is to be done with the precision and accuracy of special pleading, or that a rigid adherence to forms is to be exacted. But there must be a substantial compliance with the requisites of the law; and if, after every reasonable allowance, this cannot be found, the pardon must be adjudged to be inoperative."

In the present case I think it clear that there has been no substantial compliance with the requisites of the law in forbidding to complainant the use of the registered-letter and money-order systems, and that the defendant in this case has nothing further to justify his withholding of the use of those systems from complainant than the mere naked order of his superior, the postmaster general. Under this state of facts and pleadings, what is the duty of the court?

It has been vehemently urged, as well as elaborately and forcibly argued, that the court is absolutely without jurisdiction to control the defendant postmaster, because he is an officer of the executive department, subject to the orders and control of the postmaster general, who is irresponsible to the courts in the exercise of the duties of his office, they being matters of judgment and discretion with him. The power of the courts in the matter of controlling an executive officer in the exercise of his duties is well settled in its extent and boundaries. See *Gaines* v. *Thompson*, 7 Wall. 347, for an elaborate opinion by Justice MILLER, and a review of the cases from *Marbury* v. *Madison*, 1 Cranch, 137, down. See also *U. S.* v. *Schurz*, 102 U. S. 378. Where the act of the officer is one of mere ministerial duty, it may be controlled or compelled by the courts. Where the act of the officer involves the exercise of judgment or discretion, the courts cannot interfere to compel or prevent.

The case here is to control the acts of the postmaster of the city of New Orleans in matters in which, so far as he is concerned, his duties are mere ministerial acts. The fallacy in the argument made by the learned counsel appearing for the defendant, if there is any fallacy in their argument, is in bringing the postmaster general into the case, and then assuming that he as postmaster general may, in his judgment and discretion, as a naked order, forbid any person the use of the registered-letter or money-order system without finding such person engaged in a use of the mails forbidden by law.

The facts in the case of *Teal* v. *Felton*, 12 How. 284, are parallel to the facts in the case made here. There the postmaster, under orders from the postmaster general, which orders, however, were beyond the law, refused to deliver certain mail unless extra postage

was paid. In a suit for the conversion, brought before a justice of the peace and finally carried to the supreme court of the United States, he was held liable, notwithstanding the exercise of his own judgment in determining as to the marks upon the wrappers inclosing the mail matter withheld, and notwithstanding the orders of the postmaster general directing him in the matter. In that case the supreme court says:

"This was not a case in which judgment could be used to determine any fact except by some other evidence than the letter itself. Nor was it one calling for discretion, in the legal acceptance of that term, in respect to officers who are called upon to discharge public duties. What was done by the postmaster was a mere act of his own, and ministerial, as that is understood to be, distinct from judicial. And further, this view of the law disposes also of that point in the argument claiming for the postmaster an exemption from the suit of the plaintiff on the ground that he was called upon, in the act which he did, to exercise discretion and judgment. In *Kendall* v. *Stokes,* 3 How. 97, 98, would be found this court's exposition upon that subject, with the leading authorities in support of it. The difference between the two must at all times be determined by the law under which an officer is called upon to act, and by the character of the act. It is the law which gives the justification, and nothing less than the law can give irresponsibility to the officer, although he may be acting in good faith, under the instructions of his superior of the department to which he belongs. Here the instructions exceed the law," etc.

In the case of *Marbury* v. *Madison, supra,* the chief justice commented at some length upon the power of the courts over the action of the executive officers of the government, in the course of which he arrived at the conclusion that it is a question which must always depend upon the nature of the act. He then argues that by the constitution the president is vested with certain political powers, in the exercise of which he is to use his own discretion, and for which he is accountable only to his country and his conscience, and that he has officers to aid him in the exercise of these powers who are directly accountable to him. The acts of such an officer, he says, can never, as an officer, be examinable in a court of justice. He holds, however, where an officer is required by law to perform an act, not of this political or executive character, which affects the private rights of individuals, he is to that extent amenable to the courts. See *Gaines* v. *Thompson, supra.*

It seems to me to be clear that in the present case, the defendant, as postmaster, is required by law to perform acts, not of a political nor of a discretionary character, which affect the private rights of complainant, and that therefore to that extent he is amenable to the court. Besides, it is not conceded that the postmaster at New Orleans is subordinate and dependent upon the postmaster general to the extent claimed in argument—a mere hand or clerk. The postmaster is a sworn and bonded officer, with a tenure of office and duties established by law. In the details and general management of his office, in his expenditures, in his employes, and manner of

doing business, he is no doubt under the control of the post-office department. But it must not be forgotten that he is at the same time a servant of the public, and as such he owes duties to the citizens whose property comes into his hands, and whose rights and dearest interests may be affected by his acts. If he withholds that property and prejudices those rights, it is clear enough to me that the citizens affected may appeal to the courts, and the courts may, and it is their duty, to inquire whether he is authorized by law in his conduct. At least, I so understand the law, and I have seen no authority and know of no principle of law or public policy consistent with public liberty in conflict.

On the hearing it was argued that the complainant's bill is frivolous, for want of equity, and complainant is not entitled to equitable relief, because the state of affairs complained of is the result of complainant's own fault and intermeddling, and within its own power to remedy. On the showing made grave doubts must arise as to whether the hands of complainant are as clean as his should be who comes in a court of equity to invoke the aid of good conscience and equity. I have refrained from giving effect to this phase of this case because of the following considerations: (1) The bank, complainant, by the affidavit of its president, (hereinbefore referred to,) has purged itself of the charge that it was receiving registered letters or money orders for Dauphin, or that it was Dauphin's agent for any purpose whatever, and there is no proof to the contrary. (2) It is not proved, as charged, for suspicion is not proof, that the bank is receiving registered letters and money orders for the use of the Louisiana State Lottery Company, and, strange to say, there is no proof in this case to show that Dauphin has any connection with the Louisiana State Lottery. (3) It does not satisfactorily appear that Dauphin, in whose difficulties with the post-office department the bank is charged with intermeddling, is inhibited the free and full use of the mails by any valid finding and order of the postmaster general, and now in force.

I have now given my views of the law applicable to this case, and, of course, judgment must go accordingly; therefore, the motion to remand and the motion to dissolve the injunction are overruled and denied. Let judgment be entered accordingly.