## THE CLIFTWOOD.

## POWERY v. EMERGENCY FLEET CORPORATION.

(District Court, S. D. Alabama.  April 28, 1922.)

1. **Seamen ⬤17—Wages allowed injured seamen only for term and at rate agreed.**
   Where a seaman has been injured, so as to prevent his working on a voyage, his wages cannot be allowed for a longer term than the voyage agreed on, nor at a rate different from that agreed on.

2. **Seamen ⬤11—Maintenance and cure are allowable after term of voyage.**
   Since the right of an injured seaman to maintenance and cure is not fixed by the contract, but is one developed by the admiralty courts out of the relationship existing between the ship and the seaman, such allowance can be made for a term longer than the voyage on which he was injured.

3. **Seamen ⬤16—Seaman injured before signing articles cannot recover wages for voyage he expected to make.**
   Where a seaman was injured while working on a ship at port wages, before he had signed articles to accompany the ship on her next voyage, although he intended to do so, and before the wages had been agreed on, he cannot recover his wages for the period of the voyage subsequently made by the ship.

In Admiralty. Libel by Rollin Powery against the Emergency Fleet Corporation, as owner of the steamship Cliftwood. Libel dismissed.

Alex Howard, of Mobile, Ala., for libelant.

Pillians, Cowley & Gresham and Aubrey Boyles, Dist. Atty., all of Mobile, Ala., for the United States.

ERVIN, District Judge. In this case the steamship Cliftwood, being in the port of Mobile and contemplating a trip to Europe and return, and being in need of seamen, applied to the Shipping Bureau for seamen. No special trip was named, though it was commonly understood the trip was to be made to Europe. The Shipping Bureau notified the Seamen's Union that a certain number of A. B. seamen were wanted on the vessel, and libelant was sent by the union and reported to the vessel, where he was put to work at what was denominated "port wages." When libelant reported to the vessel, he held a conversation with the mate, who told him they could give him work and agreed on the rate of wages at which he was to be paid, but no particular time was agreed upon, nor was any voyage mentioned. He was paid his wages at the rate of wages paid A. B. seamen for two weeks on what was denominated the "port pay roll," and during the third week's work on the boat libelant suffered a serious injury, which prevented him from working any further and also from going on the cruise which the vessel undertook some week or ten days after his injury. He was paid the full week's time, notwithstanding his having been injured before the week was up, and he was sent to the hospital by the vessel, where his expenses and medical treatment were paid by the vessel. He remained in the hospital some three months, and was discharged just about the time the vessel returned to Mobile from the trip on which she had departed.

---

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

The shipping articles for the voyage were never signed by the libelant, and were not in fact signed by any of the seamen until several days after libelant suffered his injury, when, just before the vessel left, the men who were carried on the trip signed the articles. The vessel had a number of seamen working on her just as libelant was during the time she was in port, but who were not taken on the trip, and who never signed the shipping articles.

It was shown that, from a number of men employed on the vessel at the same rate of wages they would have received on the voyage, the mate selected the particular men he wanted to take on the cruise, and these men signed the shipping articles, and the others were paid off and discharged. It was further shown that libelant expected, when he went aboard, to go on the cruise, and he prepared for it by getting such luggage as he would need on the cruise.

[1] Upon the return of the vessel the libel was filed, and the question is whether the vessel, or the United States, as owner, under the act forbidding the seizing of Shipping Board vessels, is liable to libelant for the wages during the voyage. In no case I have examined have I found, where a seaman has been injured so as to prevent his working on a voyage, have wages been allowed for a longer term than the voyage agreed upon. In all the cases the wage allowed has been at the rate agreed upon. I therefore conclude that the right to wages is based upon and grows out of the contract as agreed on, and in the absence of an agreement concerning wages for a voyage none can be allowed.

[2] Maintenance and cure, however, have been allowed for a longer term than the voyage, and it is manifest that this right to maintenance and cure is one not fixed by the contract at all, because it is never mentioned in the contract, but is one developed by the admiralty courts out of the relation existing between the ship and the seamen.

[3] In this case, there having been no agreement entered into for wages on any particular voyage, there is nothing on which I can base a decree for libelant as to wages. Libelant went upon the vessel, expecting to go upon a voyage; he worked during the time the vessel was in port at the rate of wages which he expected to be paid on the contemplated voyage, but no agreement was ever entered into for the voyage, nor did libelant sign the shipping articles, and the articles between the ship and the other seamen were not signed until after libelant was injured. In the absence of any agreement fixing any wages for any particular voyage, I do not see how I can allow any wages for any particular voyage.

A decree will therefore be entered, dismissing the libel.