## MILLER v. STANDARD OIL CO.
### No. 10671.

United States Court of Appeals
Seventh Circuit.

Nov. 5, 1952.

Rehearing Denied Nov. 25, 1952.

Robert F. Doyle, Chicago, Ill., S. Eldridge Sampliner, Cleveland, Ohio, and Victor G. Hanson, Detroit, Mich., for appellant.

Stuart B. Bradley, and Seago, Pipin, Bradley & Vetter, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and KERNER and FINNEGAN, Circuit Judges.

FINNEGAN, Circuit Judge.

This is a proceeding in admiralty. The appellant, John T. Miller, filed his libel on October 4, 1951. In it he alleged that on December 21, 1944, while he was working as a seaman aboard respondent-appellee's steamer "Robert W. Stewart" he slipped and fell causing injury to his shins, knees and back, and also causing aggravation of pre-existing arthritic conditions. He prayed an award for maintenance and cure expended and to be expended. The libel likewise alleges that the steamer "Robert W. Stewart" was on December 1, 1944, a vessel of the United States of more than 20 tons burden, enrolled and licensed for the coasting trade and employed and engaged in the business of commerce between different places in different states and upon the Great Lakes and their connecting and tributary waters. Relying on the Act of February 20, 1845, 5 Stats. at Large, 726, the libelant demanded a jury trial.

The respondent-appellee, Standard Oil Company, filed exceptions to the libel alleging that it was barred by the statute of limitations; that the alleged cause of action therein referred to was barred by laches; that the alleged cause of action was also barred on the doctrine of res adjudicata, because a prior suit affecting the same cause had been filed by appellant and dismissed for want of prosecution on September 22, 1949. For the fourth and final ground of exception, respondent contended that "libelant requests a jury trial in admiralty, which is contrary to law."

The exceptions based on the statute of limitations, and on the doctrine of laches and of res adjudicata, were overruled by the District Court. However, the exception to libelant's demand for a jury trial was sustained and the respondent-appellee was ordered to file its answer.

After answer was filed, the case came on to be heard by the court sitting in admiralty

without a jury, and on May 9, 1952, it was ordered and decreed that the libel be and the same is hereby dismissed on the merits and with prejudice, and that the respondent recover from libelant "for its costs to be taxed by the clerk, and have judgment and execution therefor."

The trial court made detailed findings of fact which included the finding that the injury sustained by the libelant on the steamer "Robert W. Stewart" was not disabling; that the libelant lost no time from his work as a result thereof; that all necessary medical attention was furnished to the libelant without any expense on him by the respondent and by the United States Marine Hospital; that said injury did not cause any disability aggravating a pre-existing arthritic condition, as alleged, and that the alleged cause of action was entirely without merit.

Libelant contends here that the decree is against the greater weight of the evidence. We are convinced that the findings of fact made by the admiralty court are supported by substantial evidence. We can, therefore, only repeat what was said in Koehler v. United States, 5 Cir., 187 F.2d 933-936:

"Hundreds of citations might be given where the rule is categorically stated that on an appeal in admiralty there is a trial de novo; however the qualification of that general rule is just as widely recognized, and that is, that the findings of the district court will be accepted by the appellate court unless clearly against the preponderance of the evidence. Leathem Smith-Putnam Navigation Co. v. Osby, 7 Cir., 79 F.2d 280, 282; Kulack v. The Pearl Jack, 6 Cir., 178 F.2d 154, 155; Great Lakes Towing Co. v. American S. S. Co., 6 Cir., 165 F.2d 368."

The libelant further contends that the court erred in denying his demand for a jury trial. To support this contention he relies upon the Act of February 20, 1845. The history of that act may be found in Gillet v. Pierce, 10 Fed.Cas. page 388, No. 5437.

The Act was passed by Congress in the belief that by the Constitution and Judiciary Act of 1789, 1 Stat. 73, admiralty jurisdiction was limited to tidewaters; and that cases arising on the Great Lakes or their tributaries are cognizable only to common law, and that Congress cannot transfer jurisdiction in such cases "without saving to the parties the right of trial by jury."

However, The Supreme Court in Genesee Chief v. Peck, 12 How. 443, 53 U.S. 443, 13 L.Ed. 1058; and The Eagle, 8 Wall. 15, 75 U.S. 15–25, 19 L.Ed. 365, decided that admiralty jurisdiction of this country was not limited to tidewaters, but on the contrary by force of the Constitution and the Judiciary Act of 1789 admiralty jurisdiction extended to our lakes and navigable waters. The Act of 1845 was considered of no effect in so far as it related to the grant of jurisdiction in admiralty. The Court said:

"From this it followed that at the time of the passage of the act of 1845, the very cases provided for by it, and as to which it assumed to confer jurisdiction upon the admiralty courts as a new jurisdiction, were already cognizable in those courts, and hence that the constitutional provision guaranteeing the right of trial by jury in suits at common law had no application to those cases." 10 Fed.Cas. page 389, No. 5437.

Nevertheless, in the later revisions of the United States statutes, the revisers and Congress have seen fit to retain portions of the Act of 1845. It is incorporated in the Act of June 5, 1948, entitled Judicial Code and Judiciary, as section 1873, which reads as follows:

"In any case of admiralty and maritime jurisdiction relating to any matter of contract or tort arising upon or concerning any vessel of twenty tons or upward, enrolled and licensed for the coasting trade, and employed in the business of commerce and navigation between places in different states upon the lakes and navigable waters connecting said lakes, the trial of all issues of fact shall be by jury if either party demands it."

It will be noted that the portion of the act now retained in our Federal Statutes relates (a) to matters of contract and tort;

(b) arising upon or concerning a vessel of 20 tons burden or upwards; (c) which vessel is enrolled and licensed for the coasting trade; and (d) employed in commerce and navigation between places in different states and upon the lakes and navigable waters connecting such lakes.

The libel in the proceeding under consideration specifically charged the existence of the elements (b) (c) and (d). That is to say: it charged that the ship "Robert W. Stewart" was of 20 tons burden or upwards; that it was enrolled and listed for the coasting trade; that it was engaged in commerce and navigation between places in different states on the lakes and their tributaries. We find these elements are established in the record.

But as to the element we have marked (a) the only allegation in the libel is an allegation that the proceeding is for "maintenance and cure, a cause of action, civil and maritime."

We are therefore confronted with the question: Is a proceeding by a seaman against his shipowner for maintenance and cure, a matter of contract and tort within the meaning of Section 1873 of the Judicial Code of the United States of 1948?

Appellant contends that it is. This court has decided that question adversely to his contention in Dryden v. Ocean Accident & Guarantee Corp., 7 Cir., 138 F.2d 291, 293.

In that case a seaman brought action to recover from a shipowner money he had expended in obtaining maintenance and cure while unable to work as a result of injuries sustained on the destruction of his vessel by fire. The shipowner sought by third party proceedings to bring his insurer into the case, in order to make it defend the action and pay such judgment as might be rendered against the shipowner. The insurance company contended that it was not liable under the policy. Its argument was: that the policy indemnified the in-

surer shipowner from "liability imposed by law"; that the seaman's right to recovery for maintenance and cure was contractural in its nature. This court decided to the contrary, and said on page 293 of 138 F.2d:

"Concededly an employee-employer relationship is a contractual one. Probably many of the details of that relationship—wages, hours, etc., are fixed by specific contract provisions and are express contractual rights. But the right here sought to be enforced by the seaman was not founded on a 'meeting of the minds'—it was inexorably attached by ancient and established maritime law to every seaman's contract of employment. The parties had no choice in the matter. It was a duty superimposed by law coincidental with the formation of the contractual relation. The seaman could not contract against it—his or his employer's will is powerless to destroy it. This aspect alone reflects the true nature of the right here sought to be enforced. It is a right which the maritime law, in the wisdom of experience, found necessary and just, for the complete protection of seamen, whom maritime law has treated as 'wards of admiralty.'"

Libelant-appellant has cited no case which holds that, under the statute in question, a seaman is entitled as a matter of right to demand a jury trial in a case seeking maintenance and cure.

As was said in The Cliftwood, 5 Cir., 280 F. 726, 727:

"[The] right to maintenance and cure is one not fixed by the contract at all, because it is never mentioned in the contract, but is one developed by the admiralty courts out of the relation existing between the ship and the seamen."

The judgment of the District Court is affirmed.