**PACIFIC VEGETABLE OIL CORP. et al.,**
Libelants,

v.

**S/S SHALOM, her engines, etc., and
Zim Israel Navigation Co., Ltd.,**
Respondents,
and against

**M/V STOLT DAGALI and A/S Ocean,**
Respondent-Impleaded (and five
consolidated causes).

United States District Court
S. D. New York.

Jan. 12, 1966.

Hill, Betts, Yamaoka, Freehill & Longcope, New York City, for Zim Israel Nav. Co.

Haight, Gardner, Poor & Havens, New York City, for A/S Ocean.

EDELSTEIN, District Judge.

This is a motion by Zim Israel Navigation Co. to discontinue, without prejudice, its libel and impleading petitions against A/S Ocean arising out of the collision between the M/V STOLT DAGALI and the S.S. SHALOM which took place on November 26, 1964. Prior to the filing of Zim's libel and impleading petitions against A/S Ocean in this court,[1] A/S Ocean brought an action in

1. The first libel, filed as a result of the November 26, 1964, collision, was filed by Pacific Vegetable Oil Corp. against the S.S. SHALOM and Zim Israel Navigation Co. as owners of the SHALOM. This libel (hereafter referred to as the Pacific Vegetable libel), was filed on December 2, 1964, and alleged in effect that Pacific Vegetable had cargo aboard the STOLT DAGALI which was damaged by the collision and that the collision was the fault of the S.S. SHALOM. On December 4, 1964, a similar libel on behalf of the Bunge Corp. was filed. On December 31, 1964, Zim filed its answers to the Pacific Vegetable and Bunge libels and at the same time filed impleading petitions against the M/V STOLT DAGALI and A/S Ocean as owners of the STOLT DAGALI. On January 18, 1965, Zim filed its own libel against the STOLT DAGALI and A/S Ocean. Subsequently three other libels were filed against Zim Israel on behalf of numerous other cargo interests. The libel filed on June 7, 1965, will be referred to as the Cargill libel and the libel filed on June 8, 1965, will be referred to as the Unifood libel. On June 14, 1965, Zim Israel impleaded the STOLT DAGALI and A/S Ocean in

Gothenburg, Sweden, against Zim for damages arising out of the same ship collision that is the subject of Zim's suit here. Having arranged settlement, at the eve of trial, with cargo interests, Zim's affidavit of October 15, 1965, states that the prime reason for requesting permission to discontinue its actions in his court is to avoid two separate trials of the issues arising out of the November 26, 1964, collision. A/S Ocean has declined to discontinue its action against Zim in Gothenburg, Sweden, and therefore, Zim maintains, it should be allowed to discontinue the actions here upon payment of statutory costs, without prejudice to its filing a cross claim in the suit now pending in Sweden. A/S Ocean takes the position that it has been put to great expense defending the actions brought by Zim in this court and it would therefore be unjust to allow Zim to discontinue these actions without giving A/S Ocean an opportunity to litigate the merits of Zim's claims. A/S Ocean does not object, however, to the discontinuance of Zim's actions if the court imposes upon Zim terms and conditions which will make A/S Ocean whole and prevent Zim from suing in any court other than the Gothenburg court in Sweden. The motion at bar raises the following issues: (1) whether this court has the power to impose terms and conditions upon Zim or whether the court must grant Zim's application upon its payment of statutory costs, and; (2) if the court has the power to impose

conditions what conditions should be imposed.

The Rules of Practice in Admiralty and Maritime Cases do not in terms provide solutions for these issues. Rule 44, however, provides that:

"In suits in admiralty in all cases not provided for by these rules or by statute, the District Courts are to regulate their practice in such a manner as they deem most expedient for the due administration of justice, provided the same are not inconsistent with these rules."

In the absence of controlling rule or statute the question which this court must then decide is what procedure would be most "expedient for the due administration of justice."

Zim's memorandum of law dated October 18, 1965, submitted in support of its motion to discontinue, relied, in part, on Rule 41(a) (2) of the Federal Rules of Civil Procedure, the relevant portion of which provides that:

"[A]n action shall not be dismissed at the plaintiff's insistence save upon order of the court and upon such terms and conditions as the court deems proper. * * *"

Notwithstanding their reliance, in part, on Fed.R.Civ.P. 41(a) (2), Zim's memoranda of October 18, 1965, and October 25, 1965, nevertheless cite cases which Zim urges demonstrate its absolute right to discontinue without prejudice upon the payment of statutory costs. In a

the Cargill and Unifood libels. The final cargo libel in this action, resulting from the November 26, 1964, collision, was filed against the SHALOM on September 8, 1965, by Klockner and Company. This libel was consolidated by stipulation with the other cargo claims on October 4, 1965. The Pacific, Bunge and Zim libels were referred to this court for all purposes on February 5, 1965, pursuant to Rule 2 of the General Rules of this court. The Unifood, Cargill and Klockner libels were similarly assigned to this court shortly after each was filed. All cargo interests are represented by proctors for Pacific Vegetable or Bunge and all of the libels have been consolidated for trial. The parties have agreed that all of the discovery, pretrial proceedings and orders occurring since the Rule 2 assignment of the Pacific Vegetable, Bunge and Zim libels, are to be deemed applicable in all of the subsequently filed libels. On the Friday afternoon prior to the Monday morning on which trial was to commence, proctors for Zim notified the court that they had obtained authority to settle with all of the cargo interests for approximately 90 percent of the provable losses and at the same time, by order to show cause, Zim brought on this motion to discontinue, without prejudice, its own libel as well as its impleading petitions against the STOLT·DAGALI and A/S Ocean.

letter addressed to the court dated October 26, 1965, Zim disclaims the applicability of Fed.R.Civ.P. 41(a)(2). A/S Ocean, on the other hand, has consistently maintained that the equitable principles of Fed.R.Civ.P. 41(a)(2) should be applied in admiralty.

The Supreme Court has stated that at common law a plaintiff had

"[A]n absolute right to discontinue or dismiss his suit at any stage of the proceedings prior to verdict or judgment * * *." Ex parte Skinner, 265 U.S. 86, 92–93, 44 S.Ct. 446, 447, 68 L.Ed. 912 (1924).

In equity a bill could be dismissed without prejudice prior to the taking of testimony absent prejudice to the defendant (such as where the defendant might be entitled to a decree against the complainant). *Compare* Chicago & A. R. Co. v. Union Rolling Mill Co., 109 U.S. 702, 713–717, 3 S.Ct. 594, 27 L.Ed. 1081 (1884), and Conner v. Drake, 1 Ohio St. 166, 167, 170 (1853), *with* Thomson-Houston Elec. Co. v. Holland, 160 F. 768 (C.C.N.D.Ohio 1907) and City of Detroit v. Detroit City Ry., 55 F. 569, 572–576 (C.C.E.D.Mich.1893), appeal dismissed, 154 U.S. 500, 14 S.Ct. 1145, 38 L.Ed. 1084 (1894) and Cowham v. McNider, 261 F. 714–15 (E.D.Mich. 1919). By the end of the nineteenth century the equity courts in this district conditioned a voluntary dismissal by a complainant upon the stipulation that testimony obtained by a defendant in preparation for trial be preserved and be admissible in any new suit by the complainant arising out of the same subject matter. See American Steel & Wire Co. v. Mayer & Englund Co., 123 F. 204 (C.C.S.D.N.Y.1903); American Zylonite Co. v. Celluloid Mfg. Co., 32 F. 809 (C.C.S.D.N.Y.1887); Brush v. Condit, 20 F. 826 (C.C.S.D.N.Y.1884), *aff'd on other grounds,* 132 U.S. 39, 10 S.Ct. 1, 33 L.Ed. 251 (1889). The Supreme Court, in the Confiscation Cases, 74 U.S. (7 Wall.) 454, 456–458, 19 L.Ed. 196 (1868) indicated that the common law rule would be applied in admiralty.

That case, however, dealt only with actions *in rem* and it has been uniformly held that a vessel may be arrested only once on any cause of action, see The Gasconier, 8 F.2d 104 (E.D.N.Y.1924). Thus the dismissal referred to in the Confiscation Cases was, in effect, a dismissal with prejudice. The most illuminating discussion found among the early cases of what ought to be a libelant's power in admiralty to discontinue without prejudice is in a case not cited by either of the parties, Folger v. The Robert G. Shaw, 9 Fed.Cas. 335 (No. 4,899) (C.C.D.Mass.1847). Circuit Justice Woodbury, after briefly reviewing the common law and equity practices, stated that:

"The books of practice are rather meagre as to the form adopted in admiralty, under similar circumstances. But as the libel there is a substitute for the writ and declaration at common law, and for the bill in chancery, I see no reason why it may not be abandoned, or discontinued in a like stage of proceedings with the others, and with a like effect. Whether it be called a nonsuit, or discontinuance, or desertion of the cause, is immaterial; but it should operate as a mere discontinuance [without prejudice], if at a time when the merits are not developed, and cannot be ascertained. I have assumed as the guiding principle, it being the only one conceivable by me, that the precise stage, in which the discontinuance should be allowed without a judgment on the merits, and as a matter of right if claimed by the prosecuting party, is any progress in the cause, which has not yet furnished means to the court for a correct final decision." 9 Fed.Cas. at 336.

After reviewing the common law experience with "repeated and vexatious suits" and after indicating that the practices varied among the states, Justice Woodbury utilized his view of the com-

mon law and equity procedures to derive the rule to be applied in admiralty cases:

"I think, however, the readiness for the trial, the call of the case, the expiration of the notice, and the introduction of *any* [emphasis added] pertinent evidence, is, as before intimated, the true punctum temporis, when the right of the plaintiff to become nonsuit ceases, and that of the defendant begins for a final judgment; because, then, the parties have agreed in court, that final proceedings shall be had, then there is a presumed readiness for them, then they have begun, and means are before the court to settle the merits. Both parties then stand on an equality; neither is taken at a disadvantage then, by requiring judgment on the merits, unless special and good cause be assigned to the court for leave to become nonsuit; and then, so far as regards the defendant, a nonsuit by the plaintiff, at pleasure, as a right, is more vexatious; as then the mere costs are usually an inadequate remuneration for the expense of another preparation, and then a decision on the merits, if desired by the defendant, is practical in most cases, without being subjected to another action and preparation. It will be seen, that this test requires the case [at common law] to have been opened to the jury and some pertinent evidence submitted, if it be a trial on the general issues; or that the pleadings be closed if ending in a demurrer, so that the merits can be judged of understandingly upon them. * * * So in chancery, the evidence must be to *some* [emphasis added] extent filed or published; and by like analogy, in admiralty, in the court where the original proceedings are instituted, the evidence must be put in, so far as to enable a decision on the merits to be made." Id. at 337–338.

Mr. Justice Woodbury's statement of the appropriate admiralty rule was relied on, *inter alia,* by the Ninth Circuit in The Bainbridge, 199 F. 404, 407 (9th Cir. 1912). The instant case has proceeded far beyond the point at which, by Justice Woodbury's standards, a libelant could discontinue without prejudice merely upon the payment of costs. The date for trial has been fixed and postponed repeatedly in order to accommodate Zim. On the date trial finally was to commence all parties were in court ready to proceed. Very extensive pretrial proceedings have been held and an affidavit dated October 21, 1965, submitted on behalf of A/S Ocean affirms that apart from time spent on investigations and matters related to salvage, prior to Zim's suit, A/S Ocean's counsel have expended 2,641 hours in preparing its defense of Zim's libel and impleading libels. Interlocutory orders have been made and more than 200 exhibits have been marked, not merely for identification, but in evidence. The testimony, by deposition, already before this court includes the testimony of the master, watch officer, helmsman, and radio officer of the STOLT DAGALI and the testimony of the master, senior watch officer, chief engineer, senior watch engineer and chief radio officer of the SHALOM. Deck logs, bell books, charts, course recorder graphs, radar maintenance and operation manuals, and numerous photographs and diagrams have also been marked in evidence. Affidavits relating to Israeli substantive law were obtained from expert witnesses and furnished to the court. The logs (with translations) and charts of other vessels in the vicinity of the collision have also been marked in evidence. On these facts Zim's motion could be denied, not only under the admiralty practice of Justice Woodbury's time, but under present day practice as well. In Medina v. Erickson, 226 F.2d 475, 483 (9th Cir. 1955), *cert. denied,* 351 U.S. 912, 76 S.Ct. 702, 100 L.Ed. 1446 (1956), the Ninth Circuit noted that:

"The general rule in admiralty is that the libelant is entitled to dismiss as of right unless the litiga-

tion has gone so far that substantial rights have accrued to the respondent under the libel already filed. * * * Prior to [libelant's] filing the motion to dismiss in the admiralty case * * * [respondent] had filed his answer, stipulation for costs, a pretrial memorandum, a stipulation concerning the admissibility of certain evidence, taken and filed several depositions, and had expended $280.83, exclusive of the fee to be paid an attorney in Honolulu, Hawaii, for attending the taking of a deposition. An order had issued for the production of hospital records, and the case was ready for trial. Under the circumstances, the court properly denied the motion."

The Ninth Circuit cited Erie R. R. v. Boston, C. C. & N. Y. Canal Co., 270 F. 876 (D.Mass.1921), where the court granted libelant's motion to discontinue without prejudice noting that

"[T]he pleadings have been completed, but no further steps have been taken; no interlocutory orders affecting rights have been made; and no evidence has been taken, either orally or by deposition. * * *"

Thus even accepting the position implicitly urged by Zim, that in providing for situations not expressly covered in the Admiralty Rules reference should be had solely to the common law and equity procedures as applied in the admiralty courts, it would appear that the Erickson case and the standards articulated by Justice Woodbury would authorize this court to deny Zim's motion. This court, however, is not limited to examining case law in determining the procedure "most expedient for the due administration of justice." In filing the interstices of the Admiralty Rules, the Second Circuit has repeatedly looked to the equitable practices incorporated in the modern codes of procedure such as the Federal

Rules of Civil Procedure and the New York Civil Practice Law and Rules. See Chilean Line Inc. v. United States, 344 F.2d 757, 759–762 (2d Cir. 1965); Dressler v. MV Sandpiper, 331 F.2d 130 (2d Cir. 1964); Schiavone-Bonomo Corp. v. Buffalo Barge Towing Corp., 134 F.2d 1022 (2d Cir. 1943), *cert. denied*, 320 U.S. 749, 64 S.Ct. 53, 88 L.Ed. 445 (1943); cf. S.S. Philippine Jose Abad Santos v. Bannister, 335 F.2d 595, 597–598 (5th Cir. 1964). These flexible codes and the earlier equity practice of this district provide an alternative between the extremes of either denying libelant's motion which would result in two trials on the issues of liability for the collision of November 26, 1964, or granting libelant's motion which would not only deny respondent, who has been put to great expense in defending this suit, an opportunity to test the merits here but also require it to defend against the same claim which will be brought by Zim in Sweden, without having been compensated for the expenses here incurred. Rule 41(a) (2) of the Federal Rules of Civil Procedure authorizes the court to grant libelant's motion "upon such terms and conditions as the court deems proper." C.P.L.R. Rule 3217(b) provides that "an action shall not be discontinued by a party asserting a claim except upon order of the court and upon terms and conditions, as the court deems proper." Similarly in American Steel & Wire Co. v. Mayer & Englund Co., supra; American Zylonite Co. v. Celluloid Mfg. Co., supra; and Brush v. Condit, supra; the courts of this district conditioned discontinuances on equitable terms. Moreover, the equitable principles incorporated in Fed.R.Civ.P. 41(a) (2) and C.P.L.R. Rule 3217(b) are not inconsistent with the Admiralty Rules. See generally Miner v. Atlass, 363 U.S. 641, 646–652, 80 S.Ct. 1300, 4 L.Ed.2d 1462 (1960) (introduction of basic and complex procedural reform better left to the Court's rule-making powers).[2] It might have

---

2. The Miner case on its facts dealt with a subject "which peculiarly calls for exacting observance of the statutory procedures surrounding the rule-making

powers of the Court." 363 U.S. at 650, 80 S.Ct. at 1306. The rationale of Mr. Justice Harlan's opinion has not been applied when the Court has subsequently

been argued that since a failure to prosecute results, under Admiralty Rule 38, in a dismissal and the taxing of statutory costs, a libelant should be allowed as a matter of right to discontinue an action by motion upon the payment of statutory costs. In Prol v. Holland-American Line, 234 F.Supp. 530 (S.D. N.Y.1964), a recent case in this district interpreting Rule 38, it was held that a dismissal for failure to prosecute which did not specify whether it was with or without prejudice would be deemed without prejudice. Id. at 532–536. But that case certainly does not stand for the proposition that a dismissal pursuant to Rule 38 can never be with prejudice. Libelant here seeks a dismissal without prejudice. Such a dismissal probably could not, in the context of this case, be effected under Rule 38 properly construed. But see Miller v. Standard Oil Co., 104 F.Supp. 946 (N.D.Ill.1952) (seaman's action). For related appeal see Miller v. Standard Oil Co., 199 F.2d 457 (7th Cir. 1952), *cert. denied*, 345 U.S. 945, 73 S.Ct. 836, 97 L.Ed. 1370 (1953). Rule 38 is not, in terms, inconsistent with the application of the equitable principles incorporated in Fed.R.Civ.P. 41(a) (2) or C.P.L.R. Rule 3217(b), and, in any event, experienced counsel for libelant has not made an argument based on Rule 38.

The court holds that this case has proceeded too far for libelant to discontinue without prejudice, as of right, upon payment of statutory costs. It may discontinue only upon terms and conditions which the court deems proper.

The second basic issue to be decided by the court is what terms and conditions ought to be imposed. On this issue decision is reserved.

dealt with procedural problems narrower in scope. See Fitzgerald v. United States Lines Co., 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963). But see Id. at 22, 83 S.Ct. 1646 (dissenting opinion of Mr. Justice Harlan). Cf. Goldlawr, Inc. v. Heiman, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). But cf. Id. at 467–468, 82 S.Ct. 913 (dissenting opinion of Mr. Justice Harlan). Similarly the Miner case, as applied in admiralty, has not restricted the Circuit Courts from "applying judicially developed principles in an area where no Admiralty rule is applicable," Giannakouros v. Oriental Tanker Corp., 338 F.2d 649, 651 (4th Cir. 1964), *cert. denied*, 380 U.S. 979, 85 S.Ct. 1343, 14 L.Ed.2d 272 (1965),

or upholding a local rule providing a mode of service for foreign attachment not found in the Admiralty rules, San Rafael Compania Naviera, S.A. v. American Smelting & Refining Co., 327 F.2d 581, 589 (9th Cir. 1964). The Miner case, however, has been relied on when courts have declined to enforce civil procedure discovery practices where they are not authorized by the applicable code or treaty. See, e.g., Federal Maritime Commission v. Anglo-Canadian Shipping Co., 335 F.2d 255 (9th Cir. 1964); First National City Bank v. Aristeguieta, 287 F.2d 219, 223–227 (2d Cir. 1960), *judgment vacated as moot*, 375 U.S. 49, 84 S.Ct. 144, 11 L.Ed.2d 106 (1963).