**PACIFIC VEGETABLE OIL CORP.,**
et al., Libelants,

v.

**S/S SHALOM, her engines, etc., and Zim Israel Navigation Co., Ltd.,**
Respondents,

and v.

**M/V STOLT DAGALI and A/S Ocean,**
Respondent-Impleaded (and five consolidated causes).

Nos. 64 Ad. 1332, 64 Ad. 1347, 65 Ad. 61, 65 Ad. 578, 65 Ad. 584, 65 Ad. 915.

United States District Court
S. D. New York.

July 20, 1966.

Hill, Betts, Yamaoka, Freehill & Longcope, by David C. Wood and Eugene F. Gilligan, New York City, for respondent.

Haight, Gardner, Poor & Havens, by Gordon W. Paulsen, Richard G. Ashworth, Raymond P. Hayden, New York City, for respondent impleaded.

## OPINION

EDELSTEIN, District Judge.

In an opinion reported at 249 F.Supp. 503 (S.D.N.Y.1966) this court ruled that the Zim Israel Navigation Co., Ltd. could not discontinue without prejudice, as of right, merely upon payment of statutory costs, but rather that Zim could discontinue without prejudice only upon the terms and conditions imposed by this court. That opinion, however, expressly reserved decision on the issue of what terms and conditions ought to be imposed. Thereafter extensive hearings were held and oral argument presented. The court is, therefore, now in a position to decide what terms and conditions should be imposed upon Zim.

In its prior decision, handed down on January 12, 1966, this court read into the old Admiralty Rules the equitable

principles incorporated in Fed.R.Civ.P. 41(a) (2). Subsequent to that decision the Supreme Court merged the Civil and Admiralty Rules, effective July 1, 1966, by making the Federal Rules of Civil Procedure applicable in admiralty cases (with certain exceptions not here relevant). Paragraph 2 of the Supreme Court's promulgating order states that the new rules are effective July 1, 1966, and applicable "in all further proceedings in actions then pending, except to the extent that in the opinion of the court their application in a particular action then pending would not be feasible or would work injustice * * *." U. S. Code Cong. & Ad. News, 89th Cong. 2d Sess. 903, 941 (April 5, 1966, advance sheet).[1] In the instant case the application of the recent merger of the civil and admiralty rules is feasible and would work no injustice. Pursuant both to this court's decision of January 12, 1966, and to Paragraph 2 of the Supreme Court's order promulgating the amended Rules of Procedure, the equitable principles of Fed.R.Civ.P. 41(a) (2) are applicable to this motion.

The basic facts are set forth in the January 12, 1966, opinion and Footnote 1 thereto. Additional information, however, has become available during the course of these hearings.

The first suit arising out of the November 26, 1964, collision was actually a personal injury claim filed in this court on December 1, 1964, against both A/S Ocean and Zim Israel. After the subsequent filing of the Pacific Vegetable and Bunge Corporation cargo libels against Zim, but prior to Zim's impleaders here, A/S Ocean arrested the Zim Vessel NAHARIYA when it entered the port of Gothenburg, Sweden. The NAHARIYA was not involved in the November 26, 1964, collision and the Swedish forum's only contact with the collision was the

---

1. Paragraph 2 (as well as paragraphs 1, 3 and 4) of the Supreme Court's order promulgating the new rules, was, it would appear, inadvertently omitted from the widely circulated West Publishing Company's bound edition of the new rules. The

Clerk of the Supreme Court has confirmed, however, that paragraph 2 is a part of the Supreme Court's official order amending and merging the Civil and Admiralty Rules.

arrest and subsequent release bond posted for the NAHARIYA.

Many of the problems in this case arise because there are two main suits in two jurisdictions between the same parties to the same collision. A/S Ocean urged, at least initially, that Zim should not have impleaded it in the cargo suits after A/S Ocean had already sued Zim in Sweden. Rather, Zim should have, it was urged, promptly settled the cargo claims (which it was ultimately required to do anyway), and counterclaimed or countersued in Sweden. Thus, it was alleged, Zim was to blame for the problems arising out of dual jurisdiction. Zim urges, on the other hand, that the cargo suits and a personal injury suit had already been filed here, prior to A/S Ocean's suit in Sweden. Moreover, because the collision occurred just off the New Jersey coast (although in international waters) most of the investigation had to be done here and many of the witnesses and exhibits, including the remains of the STOLT DAGALI, were located in or near New York. Zim urges that A/S Ocean had no business commencing suit in Sweden since that forum's only contact with the parties or the collision was that a different Zim vessel, the NAHARIYA, happened to put into a Swedish port. Thus, Zim urges, A/S Ocean was to blame for the problems arising out of dual jurisdiction.

By arresting the NAHARIYA in Sweden, A/S Ocean obtained at least two tactical advantages. In order to obtain the release of the NAHARIYA Zim was required to post substantial security in Gothenburg, Sweden, against which A/S Ocean would be able to claim. Second, the arrest of the NAHARIYA gave A/S Ocean a forum in which it could be certain that the applicable law would be the Brussels Collision Convention. Thus, assuming that both vessels were to blame for the collision but that the SHALOM was more at fault than the STOLT DAGALI, A/S Ocean would fare better under the Brussels Collision Convention rule of proportional fault than it would under the American rule of equal division of damages. The cargo interests, however, had an important interest in suing Zim in the United States. Under United States law there is, between colliding ships, joint and several liability to cargo, the innocent third party. Apparently as a result of its carriage agreements with the STOLT DAGALI interests, cargo could not collect for negligent ship-handling but could only collect from the STOLT DAGALI if the STOLT DAGALI was unseaworthy. Cargo would, therefore, fare better in the United States, since under joint and several liability cargo might theoretically collect its entire loss from Zim here. In Sweden Zim's liability to cargo, under the Brussels Collision Convention, would be limited to Zim's proportional share of the fault. The cargo suits were thus commenced in this jurisdiction. Zim, finally, had been able to obtain security when it arrested the foresection of the STOLT DAGALI in this jurisdiction and also had the advantage that under American law any payments it made to cargo in settlement would be includable in its claim for collision damages against A/S Ocean. In Sweden, on the other hand, Zim would, it appears, be precluded from including payment to cargo in its collision claims. Moreover, if the SHALOM were more than fifty percent to blame for the collision, (although not solely at fault), Zim would fare better under the American equal division of damages rule, than it would under the Brussels Collision Convention rule of proportional fault, which is applied in Sweden.

It was not at all clear that this court would apply the same law as the Swedish court. Under the American conflict of law rules, the law applicable to a collision on the high seas is the law of the forum (American law) unless the law of the flag of each of the colliding vessels is the same. In the latter case, or where both vessels are of the same nationality, the law common to both vessels will be applied. Since there was reason to doubt whether or not Israeli and Norwegian law were in fact the same on

any or all of the relevant issues there was at least some basis for doubt as to what law would be applied in this court. Zim challenged the jurisdiction of the Swedish court but did not obtain a resolution of that issue before the date trial was to commence in this court.[2] Zim was faced with the possibility that a decision here on the merits might be given *res adjudicata* effect against Zim in Sweden, in any counterclaim Zim brought there, but that the *res adjudicata* effect would not bar A/S Ocean's claim in Sweden since A/S Ocean had made no affirmative claim here but had merely defended against Zim's claim. Zim extricated itself by settling with cargo for approximately 90 percent of cargo's loss and moved to dismiss its own libel and impleading petitions here without prejudice.

Whatever else can be said of this complex affair, it certainly appears that at the root of the dual jurisdictional problem was the substantial difference in American admiralty law and the Brussels Collision Convention which is applied in Sweden. Counsel for all of the parties chose forums and maneuvered in a manner which best served their respective tactical positions. No element of fault or wrongdoing can fairly be attributed to any of the parties by reason of their choice of forums.

A/S Ocean urges that one of the terms and conditions to be imposed upon Zim should be that A/S Ocean be reimbursed for the reasonable attorney's fee and expenses incurred in the defense of Zim's libel and impleading petitions here. The total attorney's fee charged from November 26, 1964, (the date of the collision),

through October 15, 1965, (the date of Zim's motion to discontinue), is $125,000. In addition it is urged that there were approximately $15,000 in general expenses and approximately $52,000 in disbursements. Pursuant to Fed.R.Civ.P. 41(a) (2) this court has the power to impose attorney's fees and expenses as a condition of a discontinuance without prejudice.

There is no real question but that the attorney's fee sought is reasonable, as such. Extensive, accurate, and current records of work done and time spent were introduced at the hearings before this court. Those records showed an expenditure of 2,255 hours by partners and an expenditure of 953 hours by associates, or a total of 3,208 attorneys' hours. See, generally, In the Matter of General Economics Corp., Docket No. 30180, 2d Cir., May 24, 1966, 360 F.2d 762. This court, having been assigned to the instant case for all purposes pursuant to Rule 2 of the General Rules of this court, had an unusual opportunity over a prolonged period of time to observe counsel's services. The services were performed with professional competency and with great diligence. With the exception of a few items referred to below the reasonableness of the disbursements is also not subject to serious challenge.

A/S Ocean does not claim, of course, that it is entitled to reimbursement for all of these items since it concedes that some of the attorney's fee and disbursements were related to work done before Zim ever impleaded A/S Ocean in the cargo suits. Similarly, it concedes, some of the factual investigation which was done here after the impleader and Zim's

2. It would be mere speculation to attempt to explain why Zim did not promptly challenge the jurisdiction of the Swedish court after the NAHARIYA was arrested. Many possibilities suggest themselves, including the possibility that the delay was related to A/S Ocean's failure to file the detailed pleadings required by Swedish law until more than nine months after the NAHARIYA was arrested and until after the discovery proceedings in the

New York action were completed. Both parties were deeply involved in these extensive discovery proceedings which undoubtedly each found of some value. Moreover, an adverse ruling on Zim's Swedish motion might have, in effect, required Zim to discontinue here before its discovery was complete. In any event, such speculation upon the motives for the timing of tactical moves do not weigh heavily on the question to be decided here.

libel would have been done here in any event, (that is, even if the entire suit had taken place solely in Sweden). The proximity of the collision to these shores, the location of the wreck of the aft section of the STOLT DAGALI and the presence of witnesses such as pilots on duty in the vicinity of the collision, as well as numerous other factors, made such investigation here inevitable. The total reimbursement sought by A/S Ocean in its main brief filed at the conclusion of these hearings is $132,360.65. The claim for attorney's fee and disbursements may be divided, for convenience, into four basic categories, related to: (1) the arrest of the STOLT DAGALI; (2) the evaluation of cargo claims; (3) the taking of depositions of STOLT DAGALI, SHALOM, and third party witnesses; and (4) trial preparations.

■ The amount allegedly expended in connection with the arrest of the STOLT DAGALI was $25,209.48.[3] It is the view of this court that no reimbursement whatever is appropriate in connection with this category. In its opposition to Zim's motion to dismiss without prejudice, which Zim urged was a matter of right, A/S Ocean contended, (and the court in its January 12, 1966, opinion agreed), that the Confiscation Cases, 74 U.S. (7 Wall.) 454, 456–458, 19 L.Ed. 196 (1868) were distinguishable from the instant case. This court noted that in the *Confiscation Cases* the Supreme Court had

"indicated that the common law rule [absolute right to discontinue without prejudice prior to verdict or judgment] would be applied in admiralty. That case, however, dealt only with actions *in rem* and it has been uniformly held that a vessel may be arrested

only once on any cause of action, see The Gasconier, 8 F.2d 104 (E.D.N.Y. 1924). Thus the dismissal referred to in the Confiscation Cases was, in effect, a dismissal with prejudice." Pacific Vegetable Oil Corp. v. S/S SHALOM, 249 F.Supp. 503, 505 (S.D.N.Y. 1966).

On oral argument A/S Ocean's counsel reiterated its position that the STOLT DAGALI could only be arrested once. Thus, as a matter of law, it appears that the STOLT DAGALI is immune from any future arrest and therefore this dismissal (although without prejudice to Zim on the merits) is, in effect, a dismissal *with* prejudice as to Zim's right to again arrest the hull of the STOLT DAGALI. Since it is clear that in the context of a dismissal *with* prejudice attorneys' fees and expenses are not appropriate, this court declines to award any attorney's fee or expenses related to the arrest of the STOLT DAGALI.

■ The second category for which attorney's fee and disbursements are sought, (in the amount of $5,458.06), is work done related to cargo claims. More than half of this amount (approximately $3,374.79), represents disbursements by the Norwegian P & I Underwriter, Assuranceforeningen Skuld (hereafter referred to as "Skuld") and Shipowners Claims Bureau (Skuld's New York representative). Of this amount, $2,627.96 represents the expenses incurred by Mr. Holmvang (an officer of Skuld) on a trip to New York to attend the deposition of the Master of the SHALOM, and the expenses of Mr. Kieding (another officer of Skuld) to attend the trial (although it should be noted that the cargo claims which Skuld might be required to pay were settled shortly before trial was to begin). Such concern on the part of an insurer interested [4] in the outcome of

---

3. It should be noted that the sum of the amounts expended in relation to each of the four categories does not equal the total reimbursement sought since that total includes A/S Ocean's own discount for "residual value."

4. A/S Ocean's brief has indicated that the STOLT DAGALI interests which Haight Gardner Poor & Havens represents are the entire group of interests involved in the vessel, including the owner, A/S Ocean; the manager, John P.

a case is perfectly understandable. The court cannot agree, however, that the expense involved in the exercise of such concern was reasonably necessary to the defense of A/S Ocean's interests. Moreover, when Zim settled with cargo, a settlement which A/S Ocean conceded was fair and reasonable, it also thereby eliminated the possibility of any direct liability from A/S Ocean to cargo in this court. Counsel for A/S Ocean has repeatedly contended that under Swedish law there is no possibility of Zim's including its payments to cargo (pursuant to the settlement here) as one of the items of damage in any counterclaim it might file in Sweden. Although it may be true, as A/S Ocean contends, that this work will have no residual value in Sweden, its lack of residual value is attributable to the fact that Zim's settlement with cargo has largely insulated A/S Ocean from any further claims arising out of the very extensive cargo losses. For these reasons the court does not deem it appropriate to award any attorney's fee or disbursements in relation to the cargo claims.

The final two categories (the taking of depositions and trial preparations) constitute the major portion of the amounts expended. The attorney's fee and disbursements incurred in relation to the SHALOM witness depositions are alleged to total $26,805.47. The amount similarly attributable to the STOLT DAGALI witness depositions is $20,320.66, and the amount attributable to the third party witness depositions is $5,029.23, or a total expenditure of $52,155.36 for all of the depositions. In addition, the preparation for trial including pretrial conferences, legal research, consultation with expert witnesses and other expenses related to trial preparation allegedly total $54,737.75. Thus, the deposition and the pretrial preparation categories total $106,893.11.

Since the litigation between the parties will be continuing in Sweden, the court, from the very outset of these proceedings, has indicated its view (and the parties have now conceded) that whether the work done here would be of use in Sweden would have an important bearing on the terms and conditions this court would deem proper. Moreover, it is the court's opinion that since the taking of depositions and the production of documents were integral parts of the preparation for trial and were principal subjects during many of the pretrial conferences, it is more realistic to treat the depositions and pretrial preparations as a unit rather than attempting to deal with each of the two categories separately.

In order to understand the value of the New York proceedings to A/S Ocean's Swedish litigation it is first necessary to appreciate that the law firm of Wikborg & Rein, Norwegian counsel for A/S Ocean, was in control of both suits. Mr. Hagberg, the Swedish attorney who has been designated to try the case for A/S Ocean in Gothenburg, testified on A/S Ocean's behalf. The court was favorably impressed with his credibility and demeanor on the stand. He testified, on cross-examination, that on the night of December 18, 1964, he received a telephone call from a member of Wikborg & Rein instructing him to arrest the NAHARIYA when it arrived in Gothenburg the following day, December 19, 1964. He was not told, and was unaware, that a personal injury suit involving both the SHALOM and the STOLT DAGALI had been filed in New York, that two cargo claims against the SHALOM had been filed in New York, and that further litigation was anticipated there. Similarly, the law firm of Haight, Gardner, Poor & Haven which was handling the comprehensive investigation taking place in New York and A/S Ocean's preparation for litigation here, was not informed of

Pedersen & Son; the hull underwriter, Skipsassuranseforengingen Unitas; the P & I underwriter, Assuranceforeningen Skuld; and the hull and P & I under-

writers' New York agents, Scandinavian Marine Claims Office, Inc. and Shipowners Claims Bureau, Inc.

the decision to arrest the NAHARIYA and to commence suit in Sweden. Mr. Hagberg testified that at no time did he have any contact with the owner of the STOLT DAGALI. He ascertained that the owner of the STOLT DAGALI was A/S Ocean by looking up the ownership in Lloyd's Registry. Mr. Hagberg's sole source of information and direction was the Norwegian law firm of Wikborg & Rein. Similarly, Haight, Gardner's brief on behalf of A/S Ocean concedes that "final decisions covering matters of "over-all policy in the handling of this case were * * * made in Norway" and that the decision to sue in Sweden was made "on the advice of * * * Wikborg & Rein and that the firm of Haight, Gardner did not participate or advise in any way with respect to these decisions." Mr. Hagberg testified that the customary Swedish practice is to file detailed pleadings setting forth the substance of a party's factual contentions. In the arrest of the NAHARIYA, however, only the most superficial information was included because this was all he was given on the telephone by the law firm of Wikborg & Rein. This "emergency" pleading was filed on December 19, 1964. A detailed supplemental pleading setting forth with great care an analysis of weather conditions and the movements of the STOLT DA-GALI and the behavior of her crew, as well as an analysis of the movements of the SHALOM and the behavior of her crew, was filed by Mr. Hagberg on September 3, 1965, after virtually all of the pretrial discovery in New York had been completed. Mr. Hagberg, in his September 3, 1965, pleading, called the Swedish court's attention to the depositions of the STOLT DAGALI crew including that of: the Master (Captain Bendiksen); the chief officer; the radio telegrapher; a deck boy; and an able-bodied seaman. All of these depositions had been taken pursuant to the litigation in this court. Similarly the September 3, 1965, Swedish pleading referred to the depositions of the SHALOM crew, including that of: the Master (Captain Freudenberg); the

senior mate on watch; the junior mate on watch; several able-bodied seamen; the chief engineer; four additional engineering personnel; and the radio telegrapher. Mr. Hagberg, in testifying before this court, indicated that he had referred to all of these New York depositions in drawing up the detailed A/S Ocean version of the collision set forth in his Swedish pleading and that the depositions had been furnished to him by the law firm of Wikborg & Rein. In addition to the SHALOM and STOLT DAGALI depositions referred to in his pleading, Mr. Hagberg indicated that he expected to receive the third party depositions. Mr. Hagberg's Swedish pleading also referred to written evidence including: the scrap deck log of the STOLT DAGALI; the chart used by the STOLT DAGALI; weather observations from Ambrose light vessel and Barnegat light vessel; weather observations from the International Weather Corporation of New York; and Western Union telegraphic weather forecasts. It also referred to: the SHALOM deck and engine logs; the bridge bell books; the captain's notations immediately after the collision; the SHALOM's standing orders; the engine bell books for the starboard and port engines; photostat copies of engine notes on a log book cover and a temperature sheet; a course recorder diagram; an engine order recorder diagram; the SHALOM's chart; the chart giving the position of the Ambrose light vessel; and the radio log of the SHALOM. In his testimony before this court Mr. Hagberg stated that he had performed no independent investigation of his own whatever, but rather had been furnished all of these depositions and documents by the law firm of Wikborg & Rein. Mr. Hagberg's Swedish pleading also states:

"It should be remarked that the list of written evidence is not complete. Here has only been mentioned the material of central importance.

"It is the intention of the claimant [A/S Ocean] to hand the City Court the minutes of the above-mentioned witness hearings [in New York] and

the written material [also obtained in New York] all of which will be referred to by the claimant."

Mr. Hagberg's testimony was to the effect that by the phrase "the list of written evidence is not complete" he meant that there were other materials which he had been furnished, (for example relating to weather conditions) but that he had not yet determined whether he wanted to introduce those other materials in evidence. When asked whether the documents were admissible in evidence in Sweden, he indicated, in substance, that all of the documents, including third party documents such as the logs of other ships, were all admissible in evidence before the Swedish court. His reservation was that, as to some of the other items not mentioned in the pleading, "I have not so far made up my own mind whether I intend to offer them as evidence or not." When asked about the depositions Mr. Hagberg indicated that although the main principal in Swedish law is that a witness should be examined before the court at the trial, a major exception is that if a witness had been examined as to the same 'facts before another court (in which there was full opportunity to cross-examine) the minutes of that deposition would be admissible as evidence in Sweden. But if the witness who had been previously deposed testified in person before the Swedish court, his deposition could be used only for cross-examination. Mr. Hagberg also testified that "should counsel for both parties agree as to the use of a deposition, the court is bound." Any possible doubt as to the use of the depositions in the Swedish proceedings was, therefore, laid to rest when, during the final oral argument before this court, counsel for Zim and A/S Ocean (without prejudice to A/S Ocean's claim that it was entitled to collect for SHALOM and third party witness depositions) stipulated that:

"all of the depositions of the STOLT DAGALI witnesses taken, all the depositions of the SHALOM witnesses taken, and all of the depositions taken of witnesses from the POLARSTERN SAN PAULO and SEATRAIN TEXAS be permitted to be introduced as evidence in the trial in Gothenburg subject to the restriction that if the witnesses appears and testifies in person the deposition can only be used for purpose of cross-examination."

There is evidence substantially to the effect that the bulk of the documents marked in evidence during pretrial here were forwarded to Wikborg & Rein. And there is also evidence which indicates that the summaries and analyses of the depositions as well as the analyses of the documents and the ships' movements prepared by Haight, Gardner in anticipation of trial here were also forwarded to Wikborg & Rein. The court infers that all of these items, insofar as some of them may not yet have come into the hands of Mr. Hagberg, will be available to him.

A/S Ocean contends, in effect, that much of the legal preparation and the taking of depositions here results in a relatively small financial saving in Sweden (computed on the basis of time saved and Mr. Hagberg's customary fees). Similarly, A/S Ocean contends that some of the expert analysis performed here could have been performed less expensively in Sweden. It should be noted, however, that there is no indication in the record whether or not the difference in cost between obtaining expert and other services in Sweden and in the United States is solely related to a disparity in the price of services there, or whether the difference in cost also reflects a variance in the character of those services. The work done here, in any event, clearly demonstrated an abundance of professional skill and competency. A/S Ocean also contends that some of the legal work and trial preparation here (for example, expert opinion regarding Israeli law and translations into English of Norwegian documents), will have no value in the Swedish litigation.

All these arguments, however, do not fully recognize the impact of Mr. Hagberg's testimony or the procedural posture of the litigation. Mr. Hagberg tes-

tified that in Sweden, except where a preliminary inquiry or hearing was held before a court or consular official, there was no pretrial practice similar to that which obtains in our federal courts. And that except for such a preliminary inquiry or hearing the only way in which the testimony of another party's witness could be taken before trial would be upon proof to the court of the unlikelihood of that witness's being available at trial. A Swedish preliminary hearing, the testimony indicated, involves both the inquisitorial and adversarial procedures and may be utilized both for Swedish administrative and civil purposes. Mr. Hagberg testified, however, that no Swedish preliminary inquiry was held relative to the instant collision between the SHALOM (an Israeli vessel), and the STOLT DAGALI (a Norwegian vessel). In the absence of such an inquiry the import of Mr. Hagberg's testimony was that he could not have been so well prepared for the trial. When asked whether it would be possible to put a monetary value on this advantage Mr. Hagberg replied "I don't think I can put any figure on it."

The procedural posture of this litigation must also be considered. Most of the cases construing Fed.R.Civ.P. 41

(a) (2) simply involve a discontinuance by a plaintiff without prejudice so that it (the plaintiff) may be able to sue a second time. The danger of harassment and "repeated and vexatious suits" is therefore usually inherent. That is the danger with which most of the cases applying Rule 41(a) (2) have attemped to equitably cope. In the instant case, however, it is the *defendant* A/S Ocean, which has commenced the other suit. It is clear that as a result of the dismissal here both parties will be claiming against each other in Sweden. The distinction between the instant case and those cases which have typically arisen under Rule 41(a) (2) is especially clear in that A/S Ocean's defensive posture in this suit has been carefully "coordinated" with its aggressive stand in Sweden, under the centralized control of the Norwegian law firm of Wikborg & Rein.

In view of the posture of the litigation, the extensive use that has been and may be permissibly made in the Swedish proceedings of the work done here (and the advantage A/S Ocean has obtained thereby), it is this court's view that no attorney's fee or disbursements should be awarded A/S Ocean except taxable costs.[5] The court's decision is that

5. For the purpose of imposition of costs the defendant may be deemed the "prevailing party" within the meaning of the now applicable Fed.R.Civ.P. 54(d) when the plaintiff dismisses its own cause of action without prejudice. Cf. Corcoran v. Columbia Broadcasting System, 121 F.2d 575 (9th Cir. 1941). Alternatively the imposition of costs may be deemed simply one of the terms and conditions which the court is authorized to impose pursuant to Fed.R.Civ.P. 41(a) (2). Assuming costs are imposed pursuant to Rule 54(d) the courts have discretion to include within taxable costs the transportation expenses and disbursements of witnesses called to attend trial or depositions. 28 U.S.C. § 1920(3) (1964). The amount so taxable is not limited by the 100 miles subpoena power of the court, but is a matter of discretion a least where the witnesses are brought from outside the country. 28 U.S.C. § 1821 (1964); Farmer v. Arabian-American Oil Co., 379 U.S. 227, 231–232, 85 S.Ct. 411, 13 L.Ed. 248

(1964). The instant case was a major ship collision involving substantial loss to both ships and cargo, totalling many millions of dollars. The facts were extremely complex and the depositions of the crew of the STOLT DAGALI were certainly necessary in this case. Zim urges that since A/S Ocean may now use the depositions for any purpose it would be inequitable to compel Zim to pay their travel costs to this country. This court does not agree. As a result of the order in the instant case both parties will be free to use the depositions in Sweden. But the former members of the STOLT DAGALI crew, most of whom at the time of the depositions were no longer in the employ of A/S Ocean and (with the exception of the captain and perhaps the watch officer) could not be considered managing agents at the time of the collision, were, nevertheless, (at the repeated insistence of counsel for Zim), gathered up by A/S Ocean's counsel from various ports throughout the

imposing the following terms and conditions will provide a just and equitable result in the instant case:

(1) The parties are required to stipulate that Zim be restricted to bringing any claim arising out of the November 26, 1964, collision between the S.S. SHALOM and the M/V STOLT DAGALI in the Gothenburg court of Sweden in which A/S Ocean's action against Zim is now pending. This restriction should be made subject to the further condition that if A/S Ocean, for any reason other than complete settlement of all claims between the parties, voluntarily discontinues its own action in Gothenburg, Sweden, then this dismissal shall not restrict Zim's right to commence a new action in any other appropriate jurisdiction. (A stipulation to this effect has already been entered into between the parties.)

(2) The parties are required to stipulate that all of the depositions of the STOLT DAGALI witnesses, SHALOM witnesses, and third party witnesses, be permitted to be introduced in evidence in the Gothenburg court subject to the restriction that if a witness appears and testifies in person the depositions may be used only for purposes of cross-examination. (A stipulation to this effect has already been entered into between the parties.)

(3) The parties are required to stipulate that all of the documents marked in evidence at the pretrial proceedings in this court be admitted in the Gothenburg trial, except that any objection reserved on the record here may be raised again in the Gothenburg court.

European continent. They were sent to the United States so that Zim could obtain their depositions here. The fact that now both parties may be in a position to use the depositions is no reason for declining to tax their travel expenses. Moreover, the costs involved are certainly not excessive. A/S Ocean's attorneys' fees, disbursements and expenses related to the collision litigation have thus far exceeded $190,000.00 and there has been still no decision on the merits.

(4) That Zim pay all costs taxable under the Federal Rules of Civil Procedure, which are now applicable in admiralty, including the travel expenses for members of the crew of the STOLT DAGALI to attend depositions noticed by Zim, in the amount of $2,485.05. (This amount has already been paid by Zim without prejudice to its claim in these proceedings that the said sum was not recoverable.)

Upon the above terms and conditions Zim's motion to discontinue without prejudice is hereby granted.

So ordered.

Requiring Zim to pay costs including $2,485.05 in travel expenses is not contrary to the national policy of minimizing the cost of litigation, see Farmer v. Arabian-American Oil Co., supra at 233–236, 85 S.Ct. 411, in the context of this case. Moreover, if the transportation expenses be deemed sought pursuant to Fed.R.Civ.P. 41(a) (2) imposition should be viewed as a condition the court deems proper.